# Richmond

COMMONWEALTH OF VIRGINIA V. APPALACHIAN ELECTRIC
POWER COMPANY.

COMMONWEALTH OF VIRGINIA V. POTOMAC ELECTRIC
POWER COMPANY.

COMMONWEALTH OF VIRGINIA V. VIRGINIA ELECTRIC AND
POWER COMPANY.

December 3, 1951.

Record Nos. 3870-3872.

Present, All the Justices.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General,* and *Henry T. Wickham, Assistant Attorney General,* for the appellant.

*T. Justin Moore, George D. Gibson* and *H. Brice Graves,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

Appalachian Electric Power Company, Potomac Electric Power Company, and Virginia Electric and Power Company, public service corporations engaged in the electric utility service in Virginia and elsewhere, filed with the State Corporation Commission, under Code, § 58-672, applications for review and correction of the assessments of State taxes which had been made against them, respectively, for the year 1950. They alleged that the assessments, made under Code, § 58-602, had erroneously included as money subject to tax in this State, funds held by or on deposit to the credit of the respective applicants in banks in other States where such applicants do business.

To avoid the imposition of interest and penalties each of the applicants paid under protest the total amount of the taxes,

and filed a supplemental application claiming a refund of that portion to which objection had been made.

The facts in the three cases were stipulated by counsel and since the questions of law were substantially the same, the cases were heard together. In an opinion by Commissioner Hooker and concurred in by Commissioner King, from which Commissioner Catterall dissented, the Commission ordered the refunds requested by the Appalachian Electric Power Company and the Virginia Electric and Power Company and a part of that requested by the Potomac Electric Power Company. From appropriate orders entered in each case the Commonwealth of Virginia has appealed.

The majority opinion held that in accordance with the administrative practice of the Commission which was in effect from 1941 through 1949, all money on deposit in Virginia, all money on deposit in other States where no operations were conducted, and that portion of the money on deposit in other States where operations were conducted which was in excess of the proportion which the business done in such other State bears to the total business of the utility, should be subject to the Virginia tax on money, but that there should be excluded from the tax all money in States other than Virginia where operations were conducted (unless exceeding the local proportion of total operating revenues).

The question presented is whether under Code, § 58-602, a corporation doing an electric utility business in this State is liable for the State tax there imposed on all money belonging to it as of January first of each year, or whether such portion of its money held or on deposit in another State and derived from and used in connection with operations in such other State, is to be deducted before computing its liability for such tax.

Appalachian Electric Power Company was incorporated in this State in 1926. It supplies electric utility service to customers in Virginia and West Virginia and to two customers in the State of Tennessee. About two-thirds of its business, measured by kilowatt hours sold or operating revenues, is in West Virginia. Its executive offices are located in Roanoke, Virginia, and New York City, while divisional offices are situated throughout West Virginia and Virginia.

On January 1, 1950, Appalachian had cash on hand or deposit in Virginia, West Virginia, Pennsylvania, Tennessee and New

York, amounting to the total sum of $3,687,723.84, and a tax of $7,375.45 was assessed thereon for that year. The order appealed from directed a refund of $2,961.32, that being the amount of the tax on money held or on deposit in West Virginia and Tennessee and employed in business outside of Virginia. The issue on this appeal is whether the latter amount should be included in the tax.

Virginia Electric and Power Company was organized in 1909, and approximately 90% of its business, measured either by kilowatt hours sold or operating revenues, is in Virginia. About 8% of its business is in North Carolina and less than 2% in West Virginia. The principal executive offices of the company are located in Richmond, Virginia, while divisional offices are situated in North Carolina as well as Virginia.

On January 1, 1950, this utility had cash on hand or deposit in Virginia, North Carolina, West Virginia, New York and Massachusetts, amounting to the sum of $4,436,110.87, and a tax of $8,872.22 was assessed thereon. The order appealed from directed a refund of $447.06, that being the amount of the tax on money on hand or deposit in North Carolina and West Virginia and employed in business out of Virginia. The issue before us is whether the latter amount should be included in the tax.

Potomac Electric Power Company was incorporated in the District of Columbia in 1896. It owned all of the stock of Braddock Light and Power Company, a Virginia public service corporation engaged in electric utility service in Fairfax and Arlington counties and the city of Alexandria. On December 31, 1949, the Potomac and Braddock companies were merged under the name of the former which became a public service corporation organized under and by virtue of the laws of Virginia, as is required by section 163 of the Constitution of this State. It also remains a corporation of the District of Columbia.

Less than 1% of the customers of Potomac Electric Power Company are located in Virginia, while more than 70% are located in the District of Columbia. Its remaining customers are located in Maryland. The executive and supervisory offices are located in the District.

On January 1, 1950, this utility had cash on hand or deposit in the District of Columbia, Maryland, Virginia and New York, amounting to the sum of $5,300,943.24, and a tax of $10,601.87

was assessed thereon. The order appealed from directed a refund to this company of $7,817.45, that being the amount of the tax on money held or on deposit in the District of Columbia and Maryland and employed in business out of Virginia. The issue on this appeal is whether the latter amount should be included in the tax.

The tax in question is imposed by Code, § 58-602, which reads as follows:

"The State tax on the intangible personal property (other than shares of stock, and bonds issued by counties, cities and towns or other political subdivisions of this State) owned by every corporation doing in this State the business of furnishing water or heat, light and power, whether by means of electricity or gas, shall be at the rate of fifty cents on every hundred dollars of the assessed value thereof.

"The State tax on the money of every corporation doing in this State the business of furnishing water or heat, light and power, whether by means of electricity or gas, shall be twenty cents on every one hundred dollars assessed value thereof.

"There shall be no local levies assessed on such intangible personal property or money.

"On the real estate and tangible personal property of every corporation doing in this State the business of furnishing water or heat, light and power, whether by means of electricity or gas, there shall be local levies at the same rate or rates as are assessed upon other real estate and tangible personal property located in such localities and the proceeds of such local levies shall be applied as provided by law."

Our problem is the proper interpretation of the language in the second paragraph of this section which imposes "The State tax on the money of every corporation doing in this State the business of furnishing water or heat, light and power, whether by means of electricity or gas."

The argument of the Commonwealth is that the language is plain and unambiguous; that it designates the taxpayer as "every corporation doing in this State" an electric utility business, and the "taxable event" as "the money" owned by such taxpayer; that the words "the money" are all inclusive, meaning all the money of the corporation wherever held or deposited; and that the words permit no deduction of money on deposit in

another State and no apportionment of the total money according to the business done in and out of this State. Consequently, it is said, the language used needs no interpretation.

■ The problem is not, we think, so simple or so easily resolved. While there are no express words of limitation on "the money" to be taxed, neither are there such inclusive words as "all money" or "whether such money be actually in or out of this State," as is found in section 58-408 relating to the tax on money owned by individuals.

The language employed designates the taxpayer as a "corporation doing in this State the business" of an electric utility. Since section 163 of our Constitution forbids a foreign corporation to do a public service business in this State, the statute looks only to Virginia corporations which conduct a utility business in Virginia. No tax is imposed on a Virginia corporation which conducts its entire business beyond our borders. Indeed, section 58-18 directs in terms that no tax shall be imposed on the "intangible property" of corporations organized under the laws of this State which do "no part of their business within this State."

As the majority opinion of the Commission aptly points out, "To hold that the language of the statute has no effect in its practical application leads to the arbitrary result that a Virginia electric utility corporation that does no business in Virginia would be free from tax (under the express terms of section 58-18, *supra*), even though it kept all of its money in Virginia," and yet "all of its money," wherever held or deposited, "would become subject to the tax if it had, or should at any time acquire, a single Virginia customer. * * * It is not believed that such an unfair, unjust and inequitable policy was ever intended by the Legislature of Virginia."

We agree that the language of the statute indicates a relationship between the business done in Virginia and the money which is to be taxed. That view is sustained by a consideration of the legislative origin of the provision and the development of the utility industry which is sought to be taxed.

The particular language of section 58-602, imposing a tax on "the money" of such utilities, first appeared in the 1916 amendment to section 36½ of the Tax Bill. (Acts 1916, ch. 472, p. 802.) It was carried into section 229 of the Tax Code of 1928 (Acts

1928, ch. 45, pp. 159, 160) and thence into section 58-602 of the Code of 1950.

According to the stipulation, in 1916 there was no electric utility doing business both in Virginia and in another State or district. The money which a Virginia electric utility owned and which the Legislature then intended to tax was derived wholly from operations within the State. If the utility did no business in Virginia no tax was imposed. Consequently, there was at that time no occasion to consider an apportionment of the moneys derived from the operation of the business in this and other States.

It was not until about 1925 that the evolution of the industry led to the establishment of utilities operating across the Virginia state line. While the language of the statute has since remained unchanged, as we shall presently see, the administrative practice of the Commission has been adapted to the industrial change.

In furtherance of the assessment of the proper taxes against it each utility company is required to make an annual report to the State Corporation Commission.

Section 58-607 requires it to report all of the real and personal property "in this State." It is not required to report any property, real or personal, outside the State.

Section 58-608 requires special reports of "all electric light and power companies" of all of their property, under enumerated headings, "to the extent that the property * * * is situated in this State."

The brief on behalf of the Commonwealth correctly points out that these sections require information as to real and tangible personal property "in this State" in order that the Commission may perform its function of assessing such property for local taxation. But since these sections have been interpreted by the Commission as requiring reports of moneys of such electric utility corporations, they support the view that such moneys, like real and tangible personal property, are to be taxed in Virginia only if they have a business *situs* here— that is, are held or employed here.

Of course, it is true that strictly speaking a deposit of money in a bank is not situated in the State, city, or town where the banking institution is located. It is an asset of the depositor and is domiciled where he is. But by common acceptation

money earned, employed and deposited in a State has a business *situs* there irrespective of the owner's domicile elsewhere. When a Virginia corporation does business in another State it is present there, and in a business sense, at least, its moneys deposited in that State and employed there are deemed to be situated there.

Our tax laws recognize this. Under section 58-411 money is classified as one of the elements of "capital," and section 58-415 contains a specific exemption that "no part of the capital" of a corporation doing business in this State and elsewhere shall be taxed if it has "a business *situs* * * * outside of this State."

We agree with the majority opinion of the Commission that the different provisions of the tax laws "are interrelated and should be interpreted together as a practical system for raising the revenue of the Commonwealth of Virginia in a practical and equitable manner."

The railroads were the first public service companies to cross State lines, and since 1915 have been required to prorate their moneys derived from actual transportation operations so as to show what part has been earned in this State and is subject to taxation here. (Acts 1915, Ex. Sess., ch. 141, p. 198; Code of 1950, §§ 58-524(10), 58-517.)

As we have pointed out, at the time the tax on money of electric utilities was first imposed in 1916, none of these companies did business both in Virginia and other States. Since their revenues were derived entirely from operations within this State there was no occasion for the establishment of a legislative formula such as was set up in section 58-524 for the tax on moneys of railroads.

While section 58-524 in terms is confined to "railway and canal" corporations and has no application to electric utilities, it is a plain expression of legislative intent with respect to a similar tax on another class of public service corporations similarly situated.

The holding of the Commission in the cases now before us is in conformity with its previous administrative practice. According to the stipulation of facts, prior to 1941 the administrative practices in assessing and collecting the State tax on such utilities were not uniform or consistent. Some companies reported and were taxed on the full amount of the moneys held

or on deposit, while others excluded the sums derived from operations in other States.

About 1933, as the majority opinion says, "a practice began to relate the tax on the money of utility companies to the business from which the money was derived." But it was not until 1941 that the question came before the Commission for formal determination. At that time, after full consideration of the matter, the Commission reaffirmed the basic principle of the practice which had grown up with its staff, that money derived from and employed in business in another State was not within the intent of the statute.

This decision was embodied by the Commission in a revised official form of tax return which has continued, until the assessments here under review, to govern the procedure for reporting by all utilities in this State. The revised form requires this information:

"Money . . . in this State."

"Money . . . out of this State and subject to taxation in this State."

"Total money . . . subject to taxation in this State."

"Money on deposit . . . out of this State and employed in business out of this State."

"Total money on deposit at end of year as per books."

As the majority opinion of the Commission says, "This was a plain announcement to all the world that money on deposit out of this State and employed in business out of this State was not subject to the Virginia tax on money."

It is of course true, as the brief of the Attorney General points out, that "the doctrine of administrative interpretation will not be allowed to change the plain meaning of the statute." *Superior Steel Corp.* v. *Commonwealth,* 147 Va. 202, 206, 136 S. E. 666. But the disagreement here is as to whether the meaning is so plain and unambiguous as to require no interpretation. We are convinced from a consideration of the majority and dissenting opinions and the briefs of counsel that it is not. Consequently, we apply well-recognized rules for the interpretation and application of such statutes.

We have frequently said that the practical construction given to a statute by public officials charged with its enforcement is entitled to great weight by the courts and in doubtful cases will be regarded as decisive. The Legislature is presumed to

be cognizant of such construction and when long continued, in the absence of legislation evincing a dissent, the courts will adopt that interpretation. See *Smith* v. *Bryan,* 100 Va. 199, 204, 40 S. E. 652, 654; *Hunton* v. *Commonwealth,* 166 Va. 229, 242, 183 S. E. 873, 878; *Commonwealth* v. *Stringfellow,* 173 Va. 284, 289, 4 S. E. (2d) 357, 359; *Miller* v. *Commonwealth,* 180 Va. 36, 42, 21 S. E. (2d) 721, 723.

Since the ruling of the Commission with respect to this matter became effective in 1941, the General Assembly has met for five regular sessions. Not only has it failed to make any change in the law, as interpreted by the Commission, but it re-enacted the applicable statute into the Code of 1950.

Moreover, "It is well-settled and familiar law that statutes imposing taxes are to be construed most strongly against the government, and in favor of the citizen, and are not to be extended by implication beyond the clear import of the language used. Whenever there is a just doubt, 'that doubt should absolve the taxpaper from his burden.'" *Commonwealth* v. *Hutzler,* 124 Va. 138, 140, 97 S. E. 775, 776. See also, *Commonwealth* v. *Stringfellow, supra* (173 Va., at page 291, 4 S. E. (2d) at page 360). "* * * Such statutes are not to be construed to include within the subjects taxed anything which is not clearly intended by the legislature to be so included." *Bott* v. *Commonwealth,* 187 Va. 745, 751, 48 S. E. (2d) 235, 238.

We are of opinion that the orders appealed from should be, and they are,

*Affirmed.*