# Richmond

COLONIAL PIPELINE COMPANY v. COMMONWEALTH OF VIRGINIA.

November 29, 1965.

Record No. 6051.

Present, All the Justices.

518

*John W. Reily (H. Brice Graves; Ralph H. Ferrell, Jr.; Richard G. Joynt; Jack Vickrey; Howard D. McCloud; Ross Arnold; Hunton, Williams, Gay, Powell & Gibson,* on brief), for the appellant.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

EGGLESTON, C. J., delivered the opinion of the court.

This is an appeal of right from an order of the State Corporation Commission denying the application of Colonial Pipeline Company for refund of taxes assessed on intangible personal property and money owned by it as of January 1, 1964. The assessment was made by the Commission on May 12 of that year and the taxes were paid under protest. Refund was sought on the grounds that the amendment to Code (Repl. Vol. 1959), 1964 Cum. Supp., § 58-588, effective on March 10, 1964, which authorized the assessment of these taxes on property owned by Colonial as of January 1 of that year, was retroactive in its application and in contravention of the Constitution of Virginia and the Constitution of the United States; that on January 1, 1964, as of which date these taxes were assessed, the commercial domicile of Colonial and its property sought to be taxed was in the State of Georgia and not in the State of Virginia, and that the latter lacked the constitutional authority to impose a tax on its property. Moreover, Colonial contended that since the commercial domicile of its property was outside the State, Virginia may not tax a greater portion of intangible property and money than is justified by the ratio of Virginia business or investment to the total of its business or investment.

The case was heard by the Commission on an agreed stipulation of facts and oral testimony. Based on a written opinion by Commissioner Catterall and concurred in by his associates, the Commission entered an order validating the assessment and denying the refund Hence this appeal.

Colonial is a public service corporation chartered and organized under the laws of the State of Delaware for the purpose of constructing a petroleum products pipeline to transport various grades of gasoline, kerosene, heating oils and similar products from the producing and refining area of the Gulf Coast northeastwardly to the eastern seaboard. This line crosses Virginia.

Since Colonial is a public service corporation, it must be a Virginia corporation in order to exercise the power of eminent domain or to carry on the functions of a public service corporation in this State. (Constitution of Virginia, § 163.) To comply with this constitutional requirement, Colonial formed a wholly-owned Virginia subsidiary which was merged into the parent company. The result of that merger was to convert Colonial into a Virginia corporation as well as a Delaware corporation. After the merger and prior to January 1, 1964, Colonial has exercised the power of eminent domain in Virginia and in other States.

As of January 1, 1964 Colonial maintained a statutory office in Wilmington, Delaware, and a registered office in Richmond, Virginia. As of that date, and thereafter, it maintained its general business office at 3390 Peachtree Road, N. E., Atlanta, Georgia. The general books and accounting records were kept at that office. The president, executive vice-president, vice-president and general counsel, secretary, treasurer and other officers all resided in Atlanta. The affairs and business of Colonial were managed and directed from the Atlanta office; all bills for its pipeline services were prepared and mailed from that office, and all collections were made there.

Chapter 217 of the Acts of Assembly of 1964 amended Code, § 58-588, so as to subject to taxation in Virginia pipeline companies having the power of eminent domain in this State and "authorized * * * to transmit * * * crude petroleum and the products or by-products thereof * * * in this State."[1] The Act amending the statute, which was an emergency act and in force from its passage, was approved by the Governor on March 10, 1964. It was specifically made applicable to the tax year beginning on January 1, 1964, and to each year thereafter.

On January 1, 1964 Colonial's pipeline in Virginia was under construction. As of that date it had money on deposit in banks located

---

[1] Prior to the amendment the statute was applicable to "Every corporation having the power of eminent domain in this State and authorized by its certificate of incorporation to transmit *natural gas* in the public service by means of a pipe line or pipe lines in this State". (Italics supplied.)

in Georgia and in New York. This money was derived from loans made to Colonial by New York banks and the funds were used for the construction of its pipelines. It also owned other intangible property, consisting of United States Treasury bills and short-term notes of certain financial institutions. These investments were made by telephone from Colonial's Atlanta office to banks or investment banking houses in New York.

In assessing Colonial's intangible property for taxation as of January 1, 1964, the Commission deducted the amount of the United States Treasury bills, which were not taxable, and assessed a tax of $123,450.26 on the balance of its short-term investments. According to the stipulation, "The tax on money was arrived at by reducing the total amount of money on hand and on deposit at January 1, 1964, of $22,486,400.82 by amounts allocated to Georgia and New York on the basis of the ratio of investments in property, plant and equipment in those States to total investments of Colonial, leaving $19,489,267.80 taxable at the rate of 20 cents per $100, producing a tax of $38,978.54."

Certain officials of Colonial testified that had they known that legislation would be enacted by the State of Virginia at its 1964 session of the General Assembly authorizing the imposition of these taxes as of January 1, 1964, Colonial would have, before that date, converted its excess intangible personal property and money into nontaxable United States Government bonds.

The first contention of Colonial is that the provision in the Act amending Code, § 58-588, making it applicable to the tax year beginning January 1, 1964, is retroactive tax legislation which has frequently been condemned by the courts as unconstitutional and void. The argument is that since the Act amending the statute became effective on March 10, 1964, this taxpayer did not know or have reason to believe before January 1, 1964, that such a tax would be levied; that had it known or had reason to believe before this date that the tax would be levied, it had at hand means of avoiding it which presumably it would have used. Consequently, it says, the "retroactive application" of such "unanticipated taxes" for the year 1964 is "unfair, unreasonable and unjust," and such taxes are unconstitutional and void.

We do not agree with this contention. In the first place, it is debatable, to say the least, whether a statute enacted during the taxable year authorizing the assessment of a tax on property held by a

taxpayer as of January first of that year should be classified as "retro-active tax legislation" which has sometimes been condemned by the courts. Under our Constitution (§ 46) the General Assembly meets in regular session once in two years on the second Wednesday in January. During such sessions it frequently revises the tax structure of the State and makes such revisions effective as of the first day of that year. In so doing, it fixes the base for the effective date of such taxes at that date.

But assuming that this provision amending § 58-588, making it applicable to the tax year beginning January 1, 1964, may properly be classified as "retroactive legislation," it does not follow that it is violative of either the State or Federal Constitutions. It is well settled that the mere retroactivity of a statute affecting taxation does not render it unconstitutional. Such a statute is valid if it is not arbitrary and does not disturb vested rights, impair contractual obligations, or violate due process. 16A C. J. S., Constitutional Law, § 419, p. 116 *ff.;* 51 Am. Jur., Taxation, § 109, p. 143; *Id.,* § 122, p. 161; *Id.,* § 661, pp. 623, 624; *Welch* v. *Henry,* 305 U. S. 134, 146, 59 S. Ct. 121, 125, 83 L. ed. 87.

In the present case no question of disturbing vested rights is in-volved. No one has the vested right to be free of taxation, nor does he have the constitutional right to know that a tax will be levied in such a manner that he may avoid it.

In the gift tax cases upon which Colonial relies (*Nichols* v. *Coolidge,* 274 U. S. 531, 47 S. Ct. 710, 71 L. ed. 1184, 52 A. L. R. 1081; *Blodgett* v. *Holden,* 275 U. S. 142, 48 S. Ct. 105, 72 L. ed. 206, and *Untermyer* v. *Anderson,* 276 U. S. 440, 48 S. Ct. 353, 72 L. ed. 645), the Supreme Court held invalid the taxation of gifts made and completely vested before the enactment of the taxing statute. This was so because the effect of the enactment was to disturb such vested rights. But, as was pointed out in *Welch* v. *Henry, supra,* "Property taxes and benefit assessments of real estate, retroactively applied, are not open to the objection successfully urged in the gift cases." 305 U. S. at 147, 59 S. Ct. at 126.

It is true, as Colonial says, that the *Welch* case involved the consti-tutionality of a retroactive *income* tax, but we think the principles there enunciated apply with equal force to the persent case involving ad valorem property taxes.

In *Department of Industrial Relations* v. *West Boylston Mfg. Co.,* 253 Ala. 67, 42 So. 2d 787, it was held that a taxable event may be

one which has occurred before the law levying the tax was enacted. Thus, a statute levying excise taxes for the current year may be made applicable to transactions for the entire year. See also, *Roth Drugs* v. *Johnson*, 13 Cal. App. 2d 720, 57 P. 2d 1022.

In *Merchants Nat. Bank of Boston* v. *Merchants Nat. Bank of Boston*, 318 Mass. 563, 62 N. E. 2d 831, it was held that property subject to taxation may be taxed as of a date prior to the passage of the statute, provided such retroactive operation does not extend back for more than a reasonable period.

In the case before us the retroactive operation of the statute was within the current year and within three months of the date on which the statute became effective. Surely, such retroactive operation did not extend for more than a reasonable period, nor was it "so harsh and oppressive as to transgress the constitutional limitation." *Welch* v. *Henry, supra*, 305 U. S. at 147, 59 S. Ct. at 126.

In its brief Colonial admits that the retroactive application of a tax law is valid if "the taxpayer had on the tax day a reasonable expectation that the tax would be imposed on the transaction or condition in question." We think the record here shows that prior to January 1, 1964 Colonial had a reasonable expectation that the tax would be imposed. In 1963, in the case of *Commonwealth ex rel. White* v. *Colonial Pipeline Co.*, 1963 S.C.C. Rep. 83, one of the questions involved was whether Code, § 58-588, as then written and prior to the amendment, applied to Colonial. In an opinion handed down on October 24, 1963, the Commission held that it did not. The effect of this holding was to exempt Colonial from taxation under the statute as it then stood. Colonial should have known that at the next session of the General Assembly, which was then approaching, the statute would be so amended as to subject it to a tax. Indeed, such was the obvious purpose of the amendment.

We hold that the provision in the statute, as amended, making it applicable to the tax year beginning on January 1, 1964, is not violative of any provision of either the State or Federal Constitutions.

Colonial's next contention is that as of January 1, 1964, the date on which its property was assessed for taxes under § 58-588, as amended, its commercial domicile was in the State of Georgia; that the taxable situs of its intangible property and money was there, and that the State of Virginia is prohibited by the Constitution of the United States from levying a tax on such property.

In its brief Colonial premises its argument thus: "The Supreme

Court of the United States has never held that a State of incorporation has the constitutional authority to impose a direct property tax on all the intangible property, wherever located, of a corporation when the property in question has acquired a situs at a commercial domicile outside the State."

There are ready answers to this premise. In the first place, the power of the State of Virginia to levy taxes is not derived from the Constitution of the United States as interpreted by the Supreme Court. On the contrary, the State has the inherent and unlimited power of taxation unless restrained by its Constitution or the Constitution of the United States. 18 Mich. Jur., Taxation, § 3, pp. 125, 126, and cases there collected. Moreover, there is a presumption of the constitutionality of a statute and the burden is upon the assailing party to prove its invalidity. 16 Am. Jur. 2d, Constitutional Law, § 137, p. 336 *ff.; Id.,* § 172, p. 390 *ff.;* 16 C. J. S., Constitutional Law, § 99, p. 388.

We are pointed to no decision of the Supreme Court, nor have we found any, which expressly holds that the State of incorporation may not levy an ad valorem tax on the intangible property and money of a corporation which has its commercial domicile in another State.

The nearest precedent for the position of Colonial is *Standard Oil Co.* v. *Commonwealth,* 311 S. W. 2d 372, decided by the highest court of Kentucky in 1958. Standard Oil Company, a Kentucky corporation with its home office in Louisville, was engaged in the business of marketing petroleum products in Kentucky, Georgia, Alabama, Mississippi and Florida. Products were shipped directly to the States in which they were to be sold. Separate books of accounts receivable and notes were entered and listed in each State and collections were deposited in local banks. No one at the home office had the authority to draw checks on the accounts in the other States. The taxing authorities of Kentucky admitted that a part of the accounts receivable and notes had a commercial, legal and taxable situs in States other than Kentucky. Kentucky undertook to levy a tax upon the accounts receivable and notes derived from the business operated in the other States and from the bank deposits derived from such accounts receivable and notes. The Supreme Court of Kentucky held that the State did not have the constitutional authority to impose an ad valorem tax on this intangible property which had a business situs elsewhere, because those intangibles received no benefit or protection from Kentucky.

This decision was based largely on *Wheeling Steel Corporation* v. *Fox*, 298 U. S. 193, 56 S. Ct. 773, 80 L. ed. 1143. This latter case held that where intangibles had acquired a commercial domicile in West Virginia they could be taxed by that State even though the owner was incorporated under the laws of Delaware. However, it did not hold that Delaware, the State of incorporation, lacked the power and authority to tax the same property.

In the present case there is no showing that Colonial's intangibles and money were produced from business carried on in Georgia. The funds are merely kept there for Colonial's convenience.

Moreover, contrary to the facts in the Kentucky case, Colonial derives a substantial benefit from the laws of the State of Virginia. It claims the power of eminent domain under the laws of this State and has exercised it.[2] The landowners of Virginia have the right to look to such intangible property for redress where their lands have been taken by Colonial. Colonial, on the other hand, needs and has the protection of the laws of Virginia in defending such actions.

For these and other reasons to be stated, we are not inclined to follow the decision in *Standard Oil Co.* v. *Commonwealth, supra,* as a precedent in the case now before us.

It will be observed that in the present case no question of double taxation is involved. There is no showing that the State of Georgia, as the alleged domicile of Colonial, has levied any tax on Colonial's intangible property and money on which Virginia has made its assessment. But the fact that this property may be subject to taxation in Georgia does not *per se* preclude the State of Virginia from subjecting it to taxation.

In *Curry* v. *McCanless*, 307 U. S. 357, 59 S. Ct. 900, 83 L. ed. 1339, 123 A. L. R. 162, an Alabama trustee held intangibles in trust. The beneficiary was domiciled in Tennessee and died. Both States sought to collect inheritance taxes. It was held that both could collect. In a dictum by four of the justices who concurred in the result, this was said:

" * * * The taxpayer who is domiciled in one state but carries on business in another is subject to a tax there measured by the value of the intangibles used in his business. * * * But taxation of a corporation by a state where it does business, measured by the value of the intangibles used in its business there, does not preclude the

[2] See *Peck Iron & Metal Co.* v. *Colonial Pipeline Co.*, Record No. 5937, and *Ferguson v. Colonial Pipeline Co.*, Record No. 6089, now pending in this court.

state of incorporation from imposing a tax measured by all its intangibles. *Cream of Wheat Co.* v. *County of Grand Forks, supra,* 253 U. S. 329, 40 S. Ct. 559, 64 L. Ed. 931; see *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 38 S. Ct. 40, 62 L. Ed. 145, L. R. A. 1918C, 124." 307 U. S. at 368, 59 S. Ct. at 906.

The principle here stated was later approved in *State Tax Commission of Utah* v. *Aldrich,* 316 U. S. 174, 62 S. Ct. 1008, 86 L. ed. 1358, where it was said that in line with that decision and others, "we repeat that there is no constitutional rule of immunity from taxation of intangibles by more than one State." 316 U. S. at 181, 62 S. Ct. at 1012. See also, *Newark Fire Ins. Co.* v. *State Board of Tax Appeals,* 307 U. S. 313, 59 S. Ct. 918, 83 L. ed. 1312.

In *Cream of Wheat Co.* v. *County of Grand Forks,* 253 U. S. 325, 328, 329, 40 S. Ct. 558, 64 L. ed. 931, it was held that a State of incorporation might tax intangibles of its corporation although the physical property and business of the corporation are entirely in another State.

On the whole, we are of opinion that there is no prohibition in the Constitution of the United States against the levy by the State of Virginia of the taxes here in question on all of the intangibles and all of the money of Colonial, although that corporation may have a commercial domicile in the State of Georgia.

The final contention of Colonial is that since its money and intangibles have a commercial domicile outside of Virginia, the base of the property tax should be limited to a ratio of the Virginia business or investment to the total value of such business or investment.

This contention is based on the premise that doing business in Virginia is the basis of the tax classification here. This is not true. The classification clearly expressed in § 58-588, as amended, is: "Every corporation * * * *authorized* by its certificate of incorporation *to transmit* * * * crude petroleum and the products or by-products thereof * * * by means of a pipeline or pipelines in this State, * * * ." (Italics supplied.) The tax is imposed because the corporation has that power in its charter. Whether it exercises that power and does business in this State is not material to the classification.

Moreover, the statutes (Code, §§ 58-588, 58-590, 58-593, 58-594), providing for the assessment, rate of taxation, etc., on this class of corporations, contain no provision for the apportionment of the tax in the manner urged by Colonial.

*Commonwealth* v. *Appalachian Electric Power Co.*, 193 Va. 37, 68 S. E. 2d 122, cited by Colonial, involved the validity of taxes assessed pursuant to Code, § 58-602, on money owned by a corporation "doing in this State the business of furnishing * * * electricity." We upheld the administrative interpretation placed upon that statute by the Commission permitting the apportionment of the tax on money. We did so because, as we there said, "the language of the statute indicates a relationship between the business done in Virginia and the money which is to be taxed." 193 Va. at 42, 68 S. E. 2d at 125. There is no such language in the statute now under consideration (§ 58-588, as amended) with respect to the tax on pipeline companies.

The order of the Commission appealed from is

*Affirmed.*