PRESENT:  Lemons, C.J., Mims, McClanahan, Powell, Kelsey, and McCullough, JJ., and Millette, S.J.

VIRGINIA ELECTRIC AND POWER COMPANY

OPINION BY
v.  Record No. 171151                    CHIEF JUSTICE DONALD W. LEMONS
                                          MARCH 29, 2018
STATE CORPORATION COMMISSION, ET AL.


FROM THE STATE CORPORATION COMMISSION

In this appeal, we consider whether certain large customers can purchase electricity from any licensed supplier of energy in the Commonwealth under Code § 56-577(A)(5), without being subject to the notice requirement set forth in Code § 56-577(A)(3).

## I.   Facts and Proceedings

Virginia Electric and Power Company ("VEPCO") is a public service corporation authorized to sell electricity in the Commonwealth.  VEPCO is the exclusive provider of electricity in a geographic area known as its service territory, subject to limited exceptions that permit customers to purchase electricity from any licensed supplier of energy in the Commonwealth.  *See* Code §§ 56-265.4, 56-577(A).  Direct Energy Services, LLC ("DES") is licensed as a competitive service provider ("CSP"), which allows it to sell electricity to customers located in another utility's service territory under certain circumstances.

On August 26, 2016, DES filed a petition for a declaratory judgment ("petition") with the State Corporation Commission ("Commission"), seeking an order that it can sell electricity provided from 100% renewable energy to customers located in VEPCO's service territory pursuant to Code § 56-577(A)(5) ("Section (A)(5)").  As relevant here, DES sought clarification that customers who can purchase electricity from a CSP under Code § 56-577(A)(3) ("Section (A)(3)"), due to their high demand for electricity ("large customers"), can also purchase

electricity produced with 100% renewable energy under Section (A)(5). Section (A)(3) provides that if a customer purchases electricity from a CSP, it cannot return to the incumbent utility in its service territory without providing five years' advance written notice. Section (A)(5) does not contain a notice requirement.

The Commission entered an order directing VEPCO to respond to the petition and providing DES with an opportunity to reply to VEPCO's response. VEPCO responded and asserted that Section (A)(3) governs all purchases of electricity by large customers from CSPs, regardless whether the electricity is produced with renewable energy. Accordingly, VEPCO asserted that large customers cannot invoke Section (A)(5) to circumvent the notice requirement in Section (A)(3).

On October 11, 2016, Appalachian Voices, a nonprofit organization that advocates for renewable energy, filed a motion to participate as a respondent. The Commission granted the motion and Appalachian Voices filed comments in support of the petition. Appalachian Voices observed that Section (A)(5), unlike Section (A)(3), does not distinguish between customers based on the size of their demand for electricity, and therefore argued that large customers can purchase electricity under Section (A)(5). VEPCO filed an additional response with leave of the Commission, and reiterated its argument that large customers who purchase electricity from CSPs do so under Section (A)(3), regardless of the source of the electricity. DES filed a reply arguing that because Section (A)(3) provides that it is "subject to the provisions of subdivisions 4 and 5," the conditions and limitations in Section (A)(3) do not apply to purchases under Section (A)(5).

In a final order dated March 15, 2017, the Commission held that large customers can purchase electricity provided from 100% renewable energy under Section (A)(5). The

Commission explained that Code § 56-577 provides for three types of retail access to electricity, each subject to its own qualifications and limitations. Section (A)(3) "permits retail access for certain large customers regardless of the type of electricity being sold." Code § 56-577(A)(4) ("Section (A)(4)") "permits aggregation of non-residential customer load for the purpose of meeting the Section (A)(3) size limits, subject to Commission approval and, like Section (A)(3), permits retail access regardless of the type of electricity being sold." In contrast, Section (A)(5) contains "no size or minimum stay requirements." It permits customers "to purchase 100% renewable energy from a CSP if the incumbent utility does not offer . . . 100% renewable energy." The Commission concluded that large customers can purchase electricity under Section (A)(5), and that they are "not subject to a minimum stay provision if they are purchasing a 100% renewable energy product from a CSP under" this section.

VEPCO moved for reconsideration of the final order. VEPCO acknowledged that Section (A)(5) contains no size or minimum stay requirements. However, VEPCO argued that because "the more specific statute will control" where "two statutes govern the same thing," interpreting "the lack of specific requirements for large customers in Section (A)(5) as negating the specific requirements for large customers in Section (A)(3) would allow the general rule to supplant the specific one." VEPCO further observed that the language "subject to the provisions of subdivisions 4 and 5" modifies the phrase "only individual retail customers . . . whose demand . . . exceeded five megawatts . . . shall be permitted to purchase electric energy from any supplier." VEPCO contended this language "makes clear that customers other than large customers are eligible to procure service from Competitive Providers under Sections (A)(4) and (A)(5)." Finally, VEPCO noted that the Commission appeared to have interchanged the notice

3

requirement in Section (A)(3) and the "minimum stay period" under 20 VAC § 5-312-80(Q) ("Rule 80(Q)"), and asked the Commission to clarify that its ruling did not impact Rule 80(Q).

The Commission suspended its final order to consider the motion for reconsideration and then reaffirmed its holding by order dated April 26, 2017. The Commission noted that under *Covel v. Town of Vienna*, 280 Va. 151, 162, 694 S.E.2d 609, 616 (2010), "when one statute speaks to a subject generally and another deals with an element of that subject specifically, the statutes will be harmonized, if possible, and if they conflict, the more specific statute prevails." The Commission explained that Sections (A)(3) and (A)(5) are not in conflict:

> Section (A)(3) only applies to large users of electricity, and it allows these users to purchase electric energy from a CSP regardless of how that electric energy is generated. Section (A)(5) applies to all retail customers "regardless of customer class," and it allows these customers to purchase from a CSP if the electric energy is provided 100% from renewable energy. Unlike Section (A)(3), Section (A)(5) does not require five years' advance notice in order for a retail customer to purchase from its incumbent electric utility after such customer has chosen to purchase 100% renewable energy from a CSP. This does not represent a conflict; this simply reflects different requirements imposed by the General Assembly for different competitive purchase options explicitly permitted by statute.

Accordingly, the Commission concluded that it is unnecessary to employ rules of statutory construction because the statute is unambiguous. The Commission reinstated its final order and clarified that its holding "does not alter the minimum stay provisions in Rule 80(Q)."

VEPCO appealed to this Court as a matter of right, pursuant to Code § 12.1-39, on the following assignments of error:

> 1. The Commission erred in its Final Order when it found that customers that are permitted to purchase energy from a competitive service provider ("CSP") under Va. Code Section 56-577(A)(3), including 100% renewable energy, may also choose to purchase energy from a CSP under Va. Code Section 56-577(A)(5).

4

2. The Commission erred in its Order on Reconsideration when it found that customers that are permitted to purchase energy from a competitive service provider ("CSP") under Va. Code Section 56-577(A)(3), including 100% renewable energy, may also choose to purchase energy from a CSP under Va. Code Section 56-577(A)(5).

3. The Commission erred in its Final Order when it found that any commercial or industrial customer, regardless of the size of the customer, may purchase energy from a CSP under Va. Code Section 56-577(A)(5) without being subject to any of the conditions imposed on certain customers taking service from a CSP under Va. Code Section 56-577(A)(3).

4. The Commission erred in its Order on Reconsideration when it found that any commercial or industrial customer, regardless of the size of the customer, may purchase energy from a CSP under Va. Code Section 56-577(A)(5) without being subject to any of the conditions imposed on certain customers taking service from a CSP under Va. Code Section 56-577(A)(3).

II. Analysis

A. Standard of Review

When an appeal is from the Commission, the standard of review "will depend on the nature of the decision under review." *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 703, 733 S.E.2d 250, 254 (2012). If we are called upon to review the Commission's interpretation of a statute, we review the decision de novo. *Id.* "When construing a statute, our primary objective 'is to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425, 722 S.E.2d 626, 629 (2012) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Id.* (quoting *Kozmina v. Commonwealth*, 281 Va. 347, 349, 706 S.E.2d 860, 862 (2011)).

5

"We have 'frequently said that the practical construction given to a statute by public officials charged with its enforcement is entitled to great weight by the courts and in doubtful cases will be regarded as decisive.'" *Appalachian Voices v. State Corp. Comm'n*, 277 Va. 509, 516, 675 S.E.2d 458, 461 (2009) (quoting *Commonwealth v. Appalachian Elec. Power Co.*, 193 Va. 37, 45, 68 S.E.2d 122, 127 (1951)). "[T]he Commission's decision 'is entitled to the respect due judgments of a tribunal informed by experience,' and we will not disturb the Commission's analysis when it is 'based upon the application of correct principles of law.'" *Id.* (quoting *Lawyers Title Ins. Corp. v. Norwest Corp.*, 254 Va. 388, 390-91, 493 S.E.2d 114, 115 (1997)).

B.   Code § 56-577

Code § 56-577 is part of the Virginia Electric Utility Regulation Act, Code § 56-576 et seq. ("Regulation Act"). The Regulation Act replaced the Virginia Electric Utility Restructuring Act ("Restructuring Act"), which was "designed to deregulate parts of the electric utility industry and introduce competition among providers of electric generation." *Appalachian Power*, 284 Va. at 699, 733 S.E.2d at 252. The Restructuring Act "established a transition period, during which the base rates of electric utilities were held constant or 'capped.'" *Id.* The Regulation Act "ended the deregulation program effective December 2008" and "reaffirmed the Commission's authority to regulate electric utility rates." *Old Dominion Comm. for Fair Util. Rates v. State Corp. Comm'n*, 294 Va. 168, 172-73, 803 S.E.2d 758, 760 (2017).

The language at issue in Sections (A)(3) and (A)(5) concerns the retail choice available to electricity customers after the expiration of capped rates. Section (A)(3) provides in pertinent part:

> After the expiration or termination of capped rates, and subject to
> the provisions of subdivisions 4 and 5, only individual retail
> customers of electric energy within the Commonwealth, regardless
> of customer class, whose demand during the most recent calendar

6

year exceeded five megawatts but did not exceed one percent of the customer's incumbent electric utility's peak load . . . shall be permitted to purchase electric energy from any supplier of electric energy licensed to sell retail electric energy within the Commonwealth . . . subject to the following conditions:

. . . .

    c.  If such customer does purchase electric energy from licensed suppliers after the expiration or termination of capped rates, it shall not thereafter be entitled to purchase electric energy from the incumbent electric utility without giving five years' advance written notice of such intention to such utility.

Section (A)(5) provides in pertinent part:

After the expiration or termination of capped rates, individual retail customers of electric energy within the Commonwealth, regardless of customer class, shall be permitted:

    a.  To purchase electric energy provided 100 percent from renewable energy from any supplier of electric energy licensed to sell retail electric energy within the Commonwealth, . . . if the incumbent electric utility serving the exclusive service territory does not offer an approved tariff for electric energy provided 100 percent from renewable energy;

    b.  To continue purchasing renewable energy pursuant to the terms of a power purchase agreement in effect on the date there is filed with the Commission a tariff for the incumbent electric utility that serves the exclusive service territory in which the customer is located to offer electric energy provided 100 percent from renewable energy, for the duration of such agreement.

Section (A)(3) allows certain large customers whose demand exceeds five megawatts to purchase electricity from a CSP, regardless whether the electricity is produced with renewable or non-renewable energy. If a large customer purchases electricity from a CSP, it cannot return to the incumbent utility without providing five years' advance written notice. Section (A)(5) applies to "individual retail customers of electric energy within the Commonwealth, regardless of customer

7

class." Customers can purchase electricity from a CSP under Section (A)(5) if they purchase electricity provided 100% from renewable energy, and (i) the incumbent utility does not offer an approved tariff for such electricity or (ii) the purchase is pursuant to a power purchase agreement in effect on the date a tariff for such energy is filed with the Commission.

VEPCO asserts that the phrase "subject to the provisions of subdivisions 4 and 5" in Section (A)(3) demonstrates that "customers other than large customers have options to purchase electricity from CSPs" under Sections (A)(4) and (A)(5). We have noted that "'subject to' means 'subordinate, subservient, inferior, obedient to; governed or affected by.'" *Donnelly v. Donatelli & Klein, Inc.*, 258 Va. 171, 181, 519 S.E.2d 133, 138 (1999) (quoting Black's Law Dictionary 1425 (6th ed. 1990)). In this context, the phrase "subject to" does not mean customers who can purchase from a CSP under Section (A)(3) are excluded from Section (A)(5).

The plain language of Sections (A)(3) and (A)(5) is clear and unambiguous. Section (A)(5) provides that "individual retail customers" can purchase electricity produced with 100% renewable energy from CSPs. Unlike Section (A)(3), Section (A)(5) does not contain a limitation based on the size of a customer's demand for electricity. Further, Section (A)(3) does not state that it governs all purchases of electricity by large customers from CSPs, and the phrase "subject to" clarifies that (A)(3) is not the only avenue under which a customer can purchase electricity from a CSP. Accordingly, we hold that customers who satisfy the size requirements of Section (A)(3) can purchase electricity from a CSP under Section (A)(5), provided that they satisfy the separate conditions of Section (A)(5).

VEPCO maintains that this interpretation creates a conflict because it allows large customers who purchase electricity from a CSP to circumvent the notice requirement in Section (A)(3). Consequently, VEPCO contends that this Court should employ the "cardinal rule of

8

statutory interpretation" that "[w]hen one statute addresses a subject in a general manner and another addresses a part of the same subject in a more specific manner, the two statutes should be harmonized, if possible, and when they conflict, the more specific statute prevails." *Lynchburg Div. of Soc. Servs. v. Cook*, 276 Va. 465, 481, 666 S.E.2d 361, 369 (2008) (quoting *Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality*, 270 Va. 423, 439-40, 621 S.E.2d 78, 87 (2005)).

We reject VEPCO's argument that this interpretation creates a conflict. Rather, we agree with the Commission that Sections (A)(3) and (A)(5) are not in conflict. As the Commission observed, the fact that Section (A)(5) lacks a notice requirement does not create a conflict; it "simply reflects different requirements imposed by the General Assembly for different competitive purchase options explicitly permitted by statute." Moreover, where, as here, the "statutory terms are plain and unambiguous, we apply them according to their plain meaning without resorting to rules of statutory construction." *Smith v. Commonwealth*, 282 Va. 449, 454, 718 S.E.2d 452, 455 (2011).

VEPCO also argues that large customers must comply with the notice requirement in Section (A)(3), even if they purchase electricity from a CSP under Section (A)(5). That argument, however, is not supported by a plain reading of the statute. Section (A)(3) states that large customers can purchase electricity from any licensed supplier of energy "subject to the following conditions." The notice requirement, contained in subsection (c), is one of four enumerated conditions. The phrase "subject to" and the fact that the notice requirement is a subsection of Section (A)(3) demonstrate that the notice requirement applies only to purchases made under Section (A)(3). There is no notice requirement for purchases under Section (A)(5),

9

and no language that incorporates the notice provision from (A)(3) into (A)(5).  Accordingly, the

notice requirement in Section (A)(3) does not apply to purchases made under Section (A)(5).

## III.  Conclusion

For the reasons stated, we will affirm the order of the Commission.

*Affirmed.*