[Civ. No. 53838. Second Dist., Div. Four. Jan. 31, 1980.]

HOFFMANN-LAROCHE, INC., Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

692

COUNSEL

Manatt, Phelps, Rothenberg & Tunney, Leslie S. Klinger, Sanford Alan Rosen, Alan Diamond and Louis A. Spoto for Plaintiff and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

OPINION

FILES, P. J.—The central issue on this appeal is the constitutionality of Revenue and Taxation Code section 23135 as a part of the formula by which the California franchise tax is computed for a New Jersey corporation which manufactures in California and sells its products in other states.

Hoffmann-LaRoche, Inc. (hereinafter taxpayer) brought this suit against the California Franchise Tax Board (hereinafter the Board) for recovery of franchise taxes paid under protest for the taxable years 1968, 1969 and 1970. The parties stipulated in the trial court "that no issues of fact exist and that the only issues are those of law." The court then gave judgment on the pleadings in favor of the Board, from which the taxpayer has appealed.

The questioned section is part of the Uniform Division of Income for Tax Purposes Act (U.D.I.T.P.A.) which was adopted by California in 1966. (Rev. & Tax. Code, § 25120 et seq.; Stats. 1966, ch. 2, § 7, p. 177.) The U.D.I.T.P.A. provides a uniform method for the allocation of a multistate corporation's total taxable income among those states which have taxing jurisdiction over the corporation. (See Keesling & Warren, *California's Uniform Division of Income Tax for Tax Purposes Act,* pt. I (1967) 15 UCLA L.Rev. 156.) This method apportions the taxpayer's income by a three-factor formula based upon property, payroll and sales, which is succinctly described in Boren, *Equitable Apportionment: Administrative Discretion and Uniformity in the Division of Corporate Income for State Tax Purposes* (1976) 49 So.Cal.L.Rev. 991, at pages 995-996, as follows: "This process entails the division of income among states through application of an arbitrary mathematical formula to the income of the taxpayer remaining after specific allocation of nonbusiness income. Under the U.D.I.T.P.A. as well as in most non-U.D.I.T.P.A. states, the formula contains three fractions, called factors. Each factor represents a category that can be considered either a representative source of a typical taxpayer's income or, in another view, a source of costs to the taxing jurisdiction. Categories represented by the U.D.I.T.P.A. factors are property, payroll, and sales. The numerator of each factor is the dollar amount of the particular category that is attributed to the taxing jurisdiction, and the denominator of each factor is the total dollar amount of the same category for all jurisdictions. The three fractions are added together and the sum divided by

three. The resulting fraction, often expressed as a percentage, is then multiplied by that amount of the tax base that has not been specifically allocated. The product so determined is the amount of income attributed to the state by the taxing formula. [Fns. omitted.]"

California Revenue and Taxation Code section 25134 defines the sales factor as follows: "The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the income year, and the denominator of which is the total sales of the taxpayer everywhere during the income year."

Revenue and Taxation Code section 25135, the provision challenged as unconstitutional in this action, provides as follows: "Sales of tangible personal property are in this state if: (a) The property is delivered or shipped to a purchaser, other than the United States government, within this state regardless of the f.o.b. point or other conditions of the sale; or (b) The property is shipped from an office, store, warehouse, factory, or other place of storage in this state and (1) the purchaser is the United States government or (2) the taxpayer is not taxable in the state of the purchaser."

The language in subdivision (b)(2) of section 25135 takes its meaning from a federal statute, Public Law No. 86-272, 15 United States Code Annotated section 381, which limits the power of the states to impose a net income tax upon income derived from interstate commerce. That statute provides in pertinent part: "(a)  No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1)  the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

"(2)  the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

(c)   For purposes of subsection (a) of this section, a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance, of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property." (Pub. L. No. 86-272, tit. 1, § 101; 15 U.S.C. § 381.)

Taxpayer is a New Jersey corporation engaged primarily in the business of manufacturing and selling pharmaceuticals, chemicals and vitamins throughout the United States. Taxpayer operates manufacturing or distribution centers in California which ship products to customers in Alaska, Arizona, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington and Wyoming (referred to collectively by taxpayer as the Western Region) as well as to customers in California. For each of the taxable years in question taxpayer's income was derived from and attributable to sources both within and without the State of California. For each of those years taxpayer's activities in the Western Region states were of such a nature that none of the Western Region states had jurisdiction to tax taxpayer under Public Law No. 86-272.

In its returns for the years in question, taxpayer reported its California income as determined by the allocation formula based upon property payroll and sales factors in compliance with Revenue and Taxation Code sections 25101, 25120-25135, except that, contrary to Revenue and Taxation Code section 25135, subdivision (b), taxpayer did not include in the numerator of the sales factor sales shipped from California to customers in the Western Region. The Board assessed additional tax in the sum of $251,797.82, which taxpayer paid under protest.

■   Taxpayer contends "that Section 25135 (b)(2) of the Revenue and Taxation Code, and its application to [taxpayer's] operations, creates an undue burden on interstate commerce, denies appellant due process of law, and denies appellant equal protection of the law. . . ." The premise of taxpayer's legal theories is that section 25135, subdivi-

sion (b)(2), which is commonly termed the "throwback rule," allows California to measure its tax by taking into account taxpayer's extraterritorial activities.

The taxpayer's attack challenges the U.D.I.T.P.A. formula only for the manner in which sales are allocated between the state of origin and the destination state. The attack is upon the provision that sales are attributed to California if the property is shipped to a state in which "the taxpayer is not taxable."

This test, as defined in the statute and explained by regulation, is not whether the destination state imposes a tax, it is whether the destination state has jurisdiction to tax.[1]

The function of the allocation formula is to determine what proportion of a corporation's total net income may properly be used as a basis for California's franchise tax.

The problem therefore becomes one of allocating income fairly among the states with which the corporation has some business contact. With respect to interstate sales, Public Law No. 86-272 has determined that the destination state may not tax net income at all unless the seller's activity in that state rises above a defined level. Inasmuch as sales do reflect business activity by the seller, the U.D.I.T.P.A. provides, in effect, that if the activity in the destination state is legally insignificant, the activity should be credited to the state of origin. This classification, if employed universally, will allow all sales to be included in the numerator of the sales factor in some state; and, as the rule is applied here, the same sale cannot be included in the numerator of the sales factor in more than one state.

---

[1]Revenue and Taxation Code section 25122: "For purposes of allocation and apportionment of income under this act, a taxpayer is taxable in another state if (a) in that state it is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax, or (b) that state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not."

Regulation section 25122, subdivision (c): "Taxable in Another State. When a State Has Jurisdiction to Subject a Taxpayer to a Net Income Tax. The second test, that of Section 25122(b) [of the code], applies if the taxpayer's business activity is sufficient to give the state jurisdiction to impose a net income tax by reason of such business activity under the Constitution and statutes of the United States. Jurisdiction to tax is not present where the state is prohibited from imposing the tax by reason of the provisions of Public Law 86-272, 15 U.S.C.A. §§ 381-385." (Cal. Admin. Code, tit. 18, § 25122, subd. (c).)

Prior to the adoption of the U.D.I.T.P.A., California used an apportionment formula based upon property, payroll and sales, but the method of allocating sales was different from the present system. In *Butler Bros.* v. *McColgan* (1942) 315 U.S. 501 [86 L.Ed. 991, 62 S.Ct. 701] that formula was attacked upon Fourteenth Amendment grounds by a taxpayer engaged in interstate sales from seven distributing houses, one of which was in California. For the year in question the operation of all houses of the taxpayer produced a profit of $1,149,677, but the taxpayer's computation, following recognized accounting principles, showed a loss for the San Francisco house. California, under its formula, allocated 8.1372 percent of the taxpayer's profit as the basis for the California tax.

In *Butler*, as in the present case, the taxpayer based its constitutional argument upon the premise that California was taxing extraterritorial values. In upholding the California law the court made these pertinent comments: "We read the statute as calling for a method of allocation which is 'fairly calculated' to assign to California that portion of the net income 'reasonably attributable' to the business done there. The test, not here challenged, which has been reflected in prior decisions of this Court, is certainly not more exacting. [Citations.] Hence, if the formula which was employed meets those standards, any constitutional question arising under the Fourteenth Amendment is at an end.... [¶] We cannot say that property, pay roll, and sales are inappropriate ingredients of an apportionment formula. We agree with the Supreme Court of California that these factors may properly be deemed to reflect 'the relative contribution of the activities in the various states to the production of the total unitary income,' so as to allocate to California its just proportion of the profits earned by appellant from this unitary business." (315 U.S. at pp. 506-507, 509 [86 L.Ed. at pp. 995-997].)

In *Harvester Co.* v. *Evatt* (1946) 329 U.S. 416 [91 L.Ed. 390, 67 S.Ct. 444] the court upheld an Ohio franchise tax based upon a formula which included the sales proceeds of goods manufactured in Ohio, no matter where the goods had been sold and delivered. The court stated its standard of judicial review as follows (at pp. 422-423 [91 L.Ed. at p. 395]): "Unless a palpably disproportionate result comes from an apportionment, a result which makes it patent that the tax is levied upon interstate commerce rather than upon an intrastate privilege, this Court has not been willing to nullify honest state efforts to make apportionments.... A state's tax law is not to be nullified merely

because the result is achieved through a formula which includes consideration of interstate and out-of-state transactions in their relation to the intrastate privilege." (See also, *Northwestern Cement Co.* v. *Minn.* (1959) 358 U.S. 450, 462-465 [3 L.Ed.2d 421, 429-431, 79 S.Ct. 357, 67 A.L.R.2d 1292].)

In the present case taxpayer's position is stated as follows in his opening brief: "Very simply, if Roche [taxpayer] is not taxable in the states comprising the 'Western Region,' and if Roche's income generated in those states is taxed by California, then California's taxation is based on income generated in the Western Region states. That Roche is not subject to income tax in the other states does not constitutionally permit California to increase its tax on Roche. [Citations.] The formula, on its face, violates the constitutional provisions prohibiting extraterritorial taxation."

The fault in this reasoning is the second "if."

The net income of taxpayer is not "generated" at the place where the merchandise is delivered. Net income is the result of the taxpayer's activity in developing, producing and marketing its products. The problem is allocation of a reasonable portion of that income, reflecting business activity within the state of California. It cannot be disputed that sales of merchandise originating in California and shipped to other states in the Western Region reflect business activity in California. The Legislature has determined that the classification made in Public Law No. 86-272 is a reasonable one for determining whether the sales activity should be attributed to the receiving state or the state of origin.

We do not deal here with a sales tax, gross receipts tax or any other type of tax on taxpayer's sales transactions. Thus jurisdiction to tax sales is not at issue.

That distinction was pointed out in an earlier franchise tax case, *El Dorado Oil Works* v. *McColgan* (1950) 34 Cal.2d 731, 742 [215 P.2d 4], where the court said: "[I]t must be remembered that the tax problem here in question concerns not a sales tax upon the transaction itself but a franchise tax assessment measured by plaintiff's net income derived from business done within this state. Accordingly, the focal point for consideration is the place where the activities of the corporation occurred which resulted in the sales."

For the reasons pointed out above, it is futile for the taxpayer to rely upon such cases as *City of Los Angeles* v. *Shell Oil Co.* (1971) 4 Cal.3d 108 [93 Cal.Rptr. 1, 480 P.2d 953] and *Estate of Fasken* (1977) 19 Cal.3d 412 [138 Cal.Rptr. 276, 563 P.2d 832]. *Shell* involved a city business license tax measured by gross receipts from the sale of goods. Thus the basis of the tax was a specific activity within the city. (4 Cal.3d at p. 125.) *Fasken* dealt with an inheritance tax upon tangible and intangible property which is within the state's boundaries. (19 Cal.3d at p. 427.) Neither opinion is relevant to the problem of allocating the net income resulting from interstate commerce.

The courts of other states have considered and upheld apportionment formulae similar or identical to California's.

In *Scott & Williams, Inc.* v. *Board of Taxation* (1977) 117 N.H. 189 [372 A.2d 1305] arising under the New Hampshire version, which is virtually identical to the provisions of the U.D.I.T.P.A., the taxpayer argued, as does taxpayer in this case, that the statute resulted in taxation of extraterritorial values. In answer the court stated, at pages 1308-1309: "The sales factor is used in recognition of the fact that a state which provides a market for a product is entitled to some tax returns on the income which it has helped to produce. [Citations.]

"However, if a state where products are delivered has not provided benefits sufficient to entitle it to tax any portion of the business' income, then it is proper to attribute the production of income from those sales entirely to the state or states which have provided 'protection opportunities and benefits' to the business throughout the manufacturing process up to the point of shipment to the purchaser. *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.Ed. 267 (1940). Allocation of such sales to New Hampshire, the state of shipment, under the 'throwback rule' therefore does not constitute taxation of extraterritorial values. Rather, it is an allocation of those sales to the state most entitled to levy a tax in return for the opportunities, protections and benefits which it has afforded the taxpayer." (See also, *Covington Fabrics* v. *South Carolina Tax Com'n.* (1975) 264 S.C. 59 [212 S.E.2d 574]; *GTE Automatic Elec., Inc.* v. *Allphin* (1977) 68 Ill.2d 326 [369 N.E.2d 841]; *Coors Porcelain Company* v. *State* (1973) 183 Colo. 325 [517 P.2d 838]; *John Ownbey Co.* v. *Butler* (1963) 211 Tenn. 366 [365 S.W.2d 33].)

The taxpayer has not cited any case holding unconstitutional the U.D.I.T.P.A. formula or any comparable method of allocating interstate sales as between the state of origin and the destination state.

The issue here is whether the taxpayer has sustained the burden of showing that the U.D.I.T.P.A. formula creates a "palpably disproportionate result." Taxpayer does have significant activity in California, including the activity which resulted in the sale and delivery of merchandise to the other states of the Western Region. There has been no showing that "income unconnected with the unitary business has been used in the formula" or any showing that "a palpably disproportionate result" comes from the apportionment.

The judgment is affirmed.

Kingsley, J., and Jefferson (Bernard), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 10, 1980.