# DEPARTMENT OF TAXATION

## V.

# WESTMORELAND COAL COMPANY

Record No. 841635

March 4, 1988

Present: All the Justices

*Barbara M. Rose, Assistant Attorney General (William G. Broaddus, Attorney General; Kenneth W. Thorson, Senior Assistant Attorney General*, on briefs), for appellant.

*P.J. DiQuinzio (Donald W. Piacentini; Carle E. Davis; J. Waller Harrison; Dechert, Price & Rhoads; McGuire, Woods, Battle & Boothe*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal, we decide whether a multistate corporation's sales of tangible personal property shipped from Virginia to destinations in other jurisdictions are included as Virginia sales for

state income tax purposes under the Commonwealth's "throw-back" rule, former Code § 58-151.048(b).[1]

On December 30, 1981, Westmoreland Coal Company (West-moreland) filed an application for correction of erroneous tax assessment, former Code § 58-1130 (now Code § 58.1-1825), naming the Department of Taxation (the Department) as defendant in the proceedings. Westmoreland sought relief from the Department's assessment of additional income taxes for the years 1975 and 1976. The case was submitted to the trial court upon stipulated facts. The trial court, finding the Department's assessment erroneous, rendered summary judgment in favor of Westmoreland. The Department appeals.

The facts are undisputed. Westmoreland is a Delaware corporation. It was authorized to do business in Virginia and conducted business in this state during the calendar years 1975 and 1976. For those years, Westmoreland filed timely Virginia corporation income tax returns.

In 1975 and 1976, Westmoreland engaged primarily in the businesses of mining and selling coal and manufacturing and selling mining equipment. In each of those years, Westmoreland had net receipts from sales of coal and equipment it shipped from Virginia to other jurisdictions as follows:

| STATES: | 1975 | 1976 |
|---|---|---|
| Alabama | $ 10,213,526.00 | $ 9,070,128.00 |
| Arizona | | 429.00 |
| Colorado | | 943,713.00 |
| Delaware | 1,005,399.00 | |
| District of Columbia | 2,262.00 | |
| Indiana | 15,092,094.00 | 14,024,148.00 |
| Kentucky | 7,487,063.00 | 5,837,162.00 |
| Michigan | 117,345.00 | |
| Missouri | 870,036.00 | 903,956.00 |
| New York | | 9,193.00 |
| North Carolina | 95,508,179.00 | 107,217,069.00 |
| Ohio | | 376,798.00 |
| Pennsylvania | 1,723,868.00 | |
| Tennessee | 2,081,492.00 | 2,081,047.00 |
| West Virginia | 6,765,081.00 | 6,297,072.00 |

[1] In 1981, the General Assembly repealed the throwback rule contained in Code § 58-151.048(b) for taxable years beginning on and after January 1, 1981. Acts 1981, c. 402.

EXPORTS:

| | | |
|---|---|---|
| Pier Sales[2] | 5,690,579.00 | 6,650,568.00 |
| Belgium | | 1,022,254.00 |
| Germany | 38,773,767.00 | 23,983,953.00 |
| Italy | 5,829,591.00 | 5,336,848.00 |
| France | 46,663,824.00 | 36,819,308.00 |
| Holland | 419,263.00 | |
| Sweden | 736,353.00 | 305,315.00 |
| Norway | 1,491,845.00 | 1,867,754.00 |
| Japan | 42,751,695.00 | 30,530,564.00 |
| TOTAL: | $283,223,262.00 | $253,277,279.00 |

Each of these jurisdictions, both domestic and foreign, had a corporate income tax in 1975 and 1976. Each of the domestic jurisdictions enumerated above used an apportionment formula in 1975 and 1976 that attributed sales to its jurisdiction on a destination basis. Each of the foreign jurisdictions enumerated above imposed its income tax on foreign corporations in 1975 and 1976 if they conducted business within its jurisdiction, that is, carried on business through a permanent establishment within its jurisdiction. In each foreign jurisdiction, the tax was applied to income from sources within the jurisdiction, computed on the basis of separate accounting for each place of business. None of these foreign jurisdictions utilized apportionment formulas in 1975 and 1976 in determining the amount of a foreign corporation's income subject to its income tax.

Westmoreland paid income taxes in the following jurisdictions, aside from Virginia, for the years 1975 and 1976: Kentucky, Montana, New York, North Carolina, Ohio, Pennsylvania, and West Virginia. It also paid income taxes in Colorado in 1976. Westmoreland had property and employees only in the eight jurisdictions named in this paragraph in the years for which it paid income taxes. In 1975 and 1976, Westmoreland also was subject to income tax in Delaware, but it qualified for a statutory exemption for each of those years.

---

[2] Pier sales are sales of coal loaded directly onto ships for export to unknown foreign destinations. Westmoreland concedes that the throwback of pier sales is correct for purposes of this litigation.

As a result of an audit, the Department added to the numerator of Westmoreland's sales factor[3] all the sales made to foreign countries, pier sales for export, and sales to nine of the domestic jurisdictions, namely, Alabama, Arizona, Colorado, Delaware, the District of Columbia, Indiana, Michigan, Missouri, and Tennessee. The Department concedes that the throwback of sales to Colorado and Delaware was incorrect for purposes of this litigation. Thus, a summary of the amount of contested throwback sales is as follows:

|  | 1975 | 1976 |
|---|---|---|
| Domestic Sales | $ 28,376,755 | $ 26,079,708 |
| Foreign Sales | 136,666,338 | 99,865,996 |
| Total Sales | $165,043,093 | $125,945,704 |
| Grand Total for 1975 and 1976 | | $290,988,797 |

The contested throwback sales are those of tangible personal property shipped to the domestic jurisdictions of Alabama, Arizona, the District of Columbia, Indiana, Michigan, Missouri, and Tennessee, and to the foreign jurisdictions of Belgium, Germany, Italy, France, Holland, Sweden, Norway, and Japan. Westmoreland paid no income tax to any of these jurisdictions although each had a corporate income tax in 1975 and 1976. The total amount of Virginia corporation income tax at issue in this appeal exceeds one-half million dollars.[4]

The controversy in this appeal concerns the proper interpretation to be given former Code § 58-151.048, which provides:

Sales of tangible personal property are in this State if: (a) the property is delivered or shipped to a purchaser or for his account within this State regardless of the f.o.b. point or other conditions of the sale; or (b) the property is shipped from an office, store, warehouse, factory, or other place in this State and the corporation is not taxable with respect thereto in the state of the purchaser by reason of the fact that such sale is not attributable or assignable to the state of

---

[3] The sales factor is one of three factors used in apportioning a multistate corporation's Virginia taxable income. *See* former Code §§ 58-151.041 through -151.049 (now Code §§ 58.1-408 through -416).

[4] The parties represented to the Court that they have been able to agree to the precise amount of the assessment.

the purchaser under the apportionment formula of such state, or would not be so attributable or assignable if such state had adopted the income tax law of this State.

■ The parties agree that Code § 58-151.048(a) provides for what is known as the "destination" rule.[5] Code § 58-151.048(b) states the "throwback" rule.[6] Our inquiry focuses primarily upon the language of the throwback rule that provides for the recapture of a sale when the corporation is not taxable "in the state of the purchaser by reason of the fact that such sale is not attributable or assignable to the state of the purchaser under the apportionment formula of such state, or would not be so attributable or assignable if such state had adopted the income tax law of this State." Code § 58-151.048(b).

■ The principles that control our decision here are well established. The Department's assessment is presumed to be correct and valid, and the taxpayer bears the burden to prove the assessment erroneous. *Commonwealth v. Bluefield Sanitarium*, 216 Va. 686, 689, 222 S.E.2d 526, 528-29 (1976).

Westmoreland contends that a sale of property to a purchaser outside Virginia was to be treated as a throwback sale in Virginia if the property was shipped from Virginia and either: (1) "such sale [was] not attributable or assignable to the state of the purchaser under the apportionment formula of such state," Code § 58-151.048(b), or (2) such sale "would not [have been] so attributable or assignable if such state had adopted the income tax law of [Virginia]," *id.*

Pursuant to its interpretation, Westmoreland asserts that because all the domestic jurisdictions in question used apportionment formulas, the first condition applied. However, Westmoreland contends, because those jurisdictions used apportionment formulas that attributed sales to their own jurisdictions on a destination basis, the first condition was not met. Consequently, Westmoreland concludes, its sales in those states could not be thrown back to Virginia.

---

[5] Ordinarily, the destination rule attributes sales receipts to the state to which goods are shipped or delivered to the customer.

[6] Generally, the throwback rule reassigns (or "throws back") to a state in which the taxpayer is taxable the sales receipts that would normally be assigned to a state in which the taxpayer is not taxable.

Continuing, Westmoreland argues that because the income tax laws of the foreign countries in question did not use apportionment formulas, the second condition contained in Code § 58-151.048(b) applied. Under the second condition, the sales to those countries would have been thrown back to Virginia if those countries had adopted the income tax laws of Virginia. The income tax laws of Virginia include an apportionment formula that attributes sales to this state on a destination basis. Thus, Westmoreland concludes, all sales delivered in foreign countries would have been attributed to that country under Virginia's destination rule.

Westmoreland's contentions proceed from the premise that when a state uses the destination rule in its apportionment formula, the state automatically attributes to its own jurisdiction receipts from sales of tangible property delivered in that state. We think Westmoreland's premise is fallacious.

Unquestionably, both federal constitutional and statutory limitations restrict a destination state's power to impose a net income tax on an interstate vendor such as Westmoreland. The most significant restriction is contained in 15 U.S.C. § 381 (1982).[7] That statute prevents a destination state from imposing a net income tax on foreign corporations that derive income from interstate commerce in that state if the corporation's only contact with the state was that of mere solicitation of the sale or the effecting of the sale through independent contractors. *Hoffmann-LaRoche, Inc.* v. *Franchise Tax Board*, 101 Cal. App. 3d 691, 694-96, 161 Cal. Rptr. 838, 840-41 (1980); *Scott & Williams, Inc.* v. *Board of Taxation*, 117 N.H. 189, 195-98, 372 A.2d 1305, 1309-11 (1977).

---

[7] 15 U.S.C. § 381 provides in pertinent part:

(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

*See also* I J. Hellerstein, *State Taxation* ¶¶ 6.10, 9.17[1][b] (1st ed. 1983).

■ Thus, sales are not "attributable or assignable to the state of the purchaser under the apportionment formula of such state" within the meaning of the first half of Code § 58-151.048(b) unless the destination state has jurisdiction to tax under the minimum standards set forth in 15 U.S.C. § 381. *See generally* Hartman, *State Taxation of Corporate Income From a Multistate Business*, 13 Vand. L. Rev. 21, 79-80 (1959) (Under the minimum jurisdictional standards of 15 U.S.C. § 381, "the 'state of purchaser' sales factor in the [three-factor] apportionment formula . . . would be zero if the only contact of the seller with the state of purchaser of the goods was that of solicitation of the sale, resulting in no tax for a state so situated.").

■ We conclude that Westmoreland has not carried its burden to show that for each jurisdiction in question it was taxable under the minimum standards set forth in 15 U.S.C. § 381. We hold, therefore, that Code § 58-151.048(b) requires the throwback to Virginia of sales made by Westmoreland in the destination states in question.

■ The second half of Code § 58-151.048(b) throws back a sale to Virginia if the sale "would not be . . . attributable or assignable if such state had adopted the income tax law of [Virginia]." The foreign countries in question did not use an apportionment formula during the tax years in dispute. Thus, these sales would be thrown back to Virginia if, applying Virginia's income tax law, the sales "would not be . . . attributable or assignable" to those foreign countries.

■ As previously noted, Virginia uses an apportionment formula that assigns or attributes sales to this jurisdiction on a destination basis. Former Code § 58-151.048(a) (now Code § 58.1-415). As in other destination states, however, Virginia cannot apportion sales to itself unless it has taxing jurisdiction. Thus, the phrase "income tax law of [Virginia]" contained in the second half of Code § 58-151.048(b) incorporates the *entire* income tax law of Virginia, including its apportionment formula and, by necessary implication, the minimum jurisdictional standards set forth in 15 U.S.C. § 381.

■ Again, we conclude that Westmoreland has failed to carry its burden to show it had sufficient nexus to be subjected to the taxing power of the foreign countries in question. Therefore, we

hold that Code § 58-151.048(b) requires that these sales also be thrown back to Virginia.

Accordingly, we will reverse the judgment of the trial court and remand the case for entry of judgment in favor of the Department consistent with the views expressed herein.

*Reversed and remanded.*