Present:   Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
           Agee, JJ., and Compton, S.J.

KATHERINE ANNE FISHER DAVENPORT, et al.

v.   Record No. 041180          OPINION BY JUSTICE DONALD W. LEMONS
                                        April 22, 2005
DEBORAH LITTLE-BOWSER, et al.

           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Randall G. Johnson, Judge

     This appeal involves the claims of four children and

three sets of adoptive parents ("Petitioners") that the

Commonwealth must issue new birth certificates listing both

adoptive parents on the certificates for each of the four

children.  Each of the children was born in Virginia and

adopted pursuant to judgments issued by courts of competent

jurisdiction in other states.  The three sets of adoptive

parents are each "same-sex" adoptive parents.  None of the

seven petitioners resides in Virginia.

     Petitioners sought the issuance of new birth certificates

listing both adoptive parents on each certificate pursuant to

Code § 32.1-261.  Deborah Little-Bowser, Registrar of Vital

Records and Health Statistics ("Registrar"), refused their

requests.  Petitioners filed a Bill of Complaint and Petition

for Writ of Mandamus against the Registrar and Robert B.

Stroube, State Health Commissioner ("Commissioner"), in the

Circuit Court of the City of Richmond, seeking a declaration

that the Registrar and the Commissioner must issue such new

1

birth certificates and requesting the issuance of a writ of mandamus or an injunction to enforce the declaration. The trial court decided the issues on cross-motions for summary judgment, granting the motions of the Registrar and Commissioner and denying the motions of the Petitioners.

## I. Proceedings Below

### A. Background

Katherine Anne Fisher Davenport was born in Arlington, Virginia, on March 26, 1990 and a birth certificate was issued. Timothy M. Fisher is her biological father and has not been divested of his parental rights. The parental rights of the biological mother were terminated by order dated April 13, 1990. W. Scott Davenport filed a petition to adopt Katherine in the Superior Court for the District of Columbia and a Decree of Adoption was entered on April 19, 1992. After providing a certified copy of the adoption decree to the Registrar and requesting the issuance of a new birth certificate, the Registrar issued a new birth certificate that listed only Mr. Davenport as Katherine's father and excluded any mention of Mr. Fisher, who is the biological father. Efforts to have yet another birth certificate issued have been rejected by the Registrar and the Department of Health.

Cameron Fredrick Fisher Davenport was born on May 18, 1992, in Arlington, Virginia and a birth certificate was

issued.  Mr. Fisher is his biological father and has not been divested of his parental rights.  The parental rights of the biological mother were terminated by order dated May 20, 1992. Mr. Davenport filed a petition to adopt Cameron in the Superior Court for the District of Columbia and a Decree of Adoption was entered on August 6, 1993.

On March 16, 2000, the Superior Court for the District of Columbia issued Amended Final Decrees of Adoption for both Katherine and Cameron.  In each decree, the court found that the child had been in the "legal care, custody and control of the natural father," and that adoption by Mr. Davenport would be "for the best interests of the adoptee."  Upon receipt of the Amended Final Decrees of Adoption, the Registrar issued new birth certificates for Katherine and Cameron each indicating Mr. Davenport as "father" and excluding Mr. Fisher, despite his status as biological father who has not been divested of custody or parental rights. Requests to have new birth certificates issued to reflect both adoptive parents on the certificates have been refused.

Hillary Anne Dalton-Moffit was born in Arlington, Virginia on August 15, 1991 and a birth certificate was issued.  On September 19, 1995, the Superior Court for the District of Columbia entered a Final Decree of Adoption "establishing the relationship of parents and child for all

3

purposes" between Mark M. Dalton, Bruce H. Moffit, and Hillary. After providing proof of the adoption, Mr. Dalton requested that the Registrar issue a new birth certificate listing both Mr. Moffit and Mr. Dalton as parents. His request was denied.

John Doe was born on February 27, 1999, in Falls Church, Virginia and a birth certificate was issued. On December 23, 1999, an order of adoption was entered in the Family Court of Dutchess County, New York, decreeing Jean Doe and Jane Doe to be the adoptive parents of John Doe. After providing proof of the adoption, Jane Doe requested the issuance of a new birth certificate reflecting both adoptive parents' names. Her request was denied.

### B. Proceedings Below

Petitioners filed a bill of complaint and petition for writ of mandamus against the Registrar and the Commissioner contending that the refusal to provide new birth certificates listing the names of both adoptive parents in each case violates Code §§ 32.1-261(A) and 8.01-389, 28 U.S.C. § 1738 (2000), and both the Full Faith and Credit Clause of Article IV, Section 1, and the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. They sought an injunction or writ of mandamus requiring the Commonwealth to issue the requested birth certificates, a

4

declaration that the Commonwealth's conduct was unlawful, nominal damages, and reasonable attorneys' fees and costs.

The Commonwealth filed a demurrer, which was subsequently denied, and then an answer. After discovery, Petitioners moved for summary judgment and the Commonwealth filed a cross-motion for summary judgment. Both parties submitted briefs to the trial court. After oral argument, the trial court granted the Commonwealth's motion for summary judgment and denied Petitioners' motion for summary judgment. In its final order, the trial court held that "there is no issue of material fact" and that the Commonwealth was "entitled to judgment as a matter of law."

Petitioners filed a timely petition for appeal. We granted three assignments of error: whether the trial court's grant of summary judgment violated "the Full Faith and Credit Clause, Article 4, Section 1 of the United States Constitution [sic], and Section 8.01-389 of the Virginia Code [sic]"; whether the trial court's grant of summary judgment was contrary "to Section 32.1-261(A) of the Virginia Code [sic]"; and whether the trial court's denial of the Petitioners' "Motion for Summary Judgment Interprets Virginia Law So As to Deny [Petitioners] the Equal Protection of the Laws."

## II. Analysis

### A. Standard of Review

The three assignments of error are questions of law which we review de novo.  Wilby v. Gostel, 265 Va. 437, 440, 578 S.E.2d 796, 798 (2003); Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002).  Because Petitioners argue that Virginia law requires the Commonwealth to issue a new birth certificate listing both adoptive parents in each case, we will consider this assignment of error first. See Volkswagen of America, Inc. v. Smit, 266 Va. 444, 454, 587 S.E.2d 526, 532 (2003) (it is an "established principle of constitutional law that a court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to decide the merits of the case").

B.  Issuance of Birth Certificates Under Virginia Law

In its ruling, the trial court gave two reasons for granting the Commonwealth's motion for summary judgment. First, the trial court held that "under current Virginia law, birth certificates can only list the name of a mother and a father.  Birth certificates cannot list the names of two mothers or the names of two fathers.  It just cannot be done." Second, the trial court held that "what [it] is being asked to do in directing the registrar to change the birth certificates, in spite of the language that the [Petitioners] try to couch their argument in, is asking [it] to recognize a status that Virginia does not accord to its own citizens."

6

In support of this second reason, the trial court stated that Petitioners were asking it "to do something which the public policy of Virginia just simply does not allow.  Whether that is right or whether that is wrong, is not for this [court] to determine.  It is something that needs to be addressed by the legislature, if it is addressed at all."

At the outset, it is important to state what this case is not about.  There was much discussion in the trial court, and some before this Court, concerning homosexual marriage.  This case is about issuing birth certificates under the provisions of Virginia law; it is not about homosexual marriage, nor is it about "same-sex" relationships, nor is it about adoption policy in Virginia.

The primary statutory provision governing the issuance of a new Virginia birth certificate upon proof of adoption, legitimation, or determination of paternity is Code § 32.1-261.  When issuing a new birth certificate,

> The State Registrar shall establish a new certificate of birth for a person born in this Commonwealth upon receipt of the following:
>
> An adoption report as provided in § 32.1-262, a report of adoption prepared and filed in accordance with the laws of another state or foreign country, or a certified copy of the decree of adoption together with the information necessary to identify the original certificate of birth and to establish a new certificate of birth.

Code § 32.1-261(A)(1).  The relevant Administrative Code section promulgated to carry out this statutory provision states,

> The new certificate of birth prepared after adopting . . . shall be on the form in use at the time of birth and shall include the following items and such other information necessary to complete the certificate:

> . . . .

> The names and personal particulars of the adoptive parents or of the natural parents, whichever is appropriate.

12 § VAC 5-550-330.  In both of these provisions, and in the other provisions concerning adoption and the issuance of new birth certificates, the term "adoptive parents" or "intended parents" is used.  See, e.g., Code § 32.1-261(A)(3); Code § 32.1-261(A)(4); and 12 § VAC 5-550-280.  No definition is provided for these terms.

In its brief and in much of its oral argument, the Commonwealth argued that "this Court should defer to the Executive Branch's interpretation unless that interpretation is patently unreasonable and represents an abuse of discretion" and that "[i]t is well established that the interpretation of the agency entrusted with the administration of a statute is entitled to deference by this [C]ourt."  In support of these contentions, the Commonwealth cites Department of Taxation v. Westmoreland Coal Co., 235 Va. 94,

8

366 S.E.2d 78 (1988); Forst v. Rockingham Poultry Mktg. Coop., 222 Va. 270, 279 S.E.2d 400 (1981); Commonwealth v. Lucky Stores, Inc., 217 Va. 121, 225 S.E.2d 870 (1976); Commonwealth v. Bluefield Sanitarium, 216 Va. 686, 222 S.E.2d 526 (1976); and Commonwealth v. Appalachian Elec. Power Co., 193 Va. 37, 68 S.E.2d 122 (1951).

In Westmoreland Coal, a case involving interpretation of an assessment, we stated: "The principles that control our decision here are well established. The Department's assessment is presumed to be correct and valid, and the taxpayer bears the burden to prove the assessment erroneous." 235 Va. at 99, 366 S.E.2d at 80 (citing Bluefield Sanitarium, 216 Va. at 689, 222 S.E.2d at 528-29 (1976)). In Forst, a case involving tax assessments, we recognized that the plain meaning of the statute and a long-standing Department of Taxation interpretation merited judgment in favor of the tax assessment levied. 222 Va. at 276-78, 279 S.E.2d at 403-05.

In Lucky Stores, a case involving the methods used for income taxation of a multi-state foreign corporation, we held that the Department of Taxation neither misapplied the law nor abused its discretion. 217 Va. at 131, 225 S.E.2d at 877. We then added, "[f]urthermore, and according the required weight to the construction of a statute by a state official charged with its administration . . . we find the interpretation . . .

9

to be reasonable and rational."  Id. at 131-32, 225 S.E.2d at 877 (citing Commonwealth v. Progressive Community Club, 215 Va. 732, 739, 213 S.E.2d 759, 763 (1975)).

In Bluefield Sanitarium, a case involving a tax assessment, we discussed and affirmed the rule that "a tax assessment made by the proper authorities is prima facie correct and valid and that the burden is on the taxpayer to show that such assessment is erroneous."  216 Va. at 689, 222 S.E.2d at 528-29.  We noted "that the construction of a statute by a state official charged with its administration is entitled to great weight."  Id.

In the final case cited by the Commonwealth, Appalachian Elec. Power Co., a case also involving tax assessments, the Commonwealth placed great weight on our observation

> that the practical construction given to a
> statute by public officials charged with its
> enforcement is entitled to great weight by the
> courts and in doubtful cases will be regarded
> as decisive.  The Legislature is presumed to be
> cognizant of such construction and when long
> continued, in the absence of legislation
> evincing a dissent, the courts will adopt that
> interpretation.

193 Va. at 45-46, 68 S.E.2d at 127 (citations omitted). However, the Commonwealth overlooks the immediately preceding paragraph, where we stated,

> It is of course true, as the brief of the
> Attorney General points out, that 'the doctrine

10

of administrative interpretation will not be allowed to change the plain meaning of the statute.' Superior Steel Corp. v. Commonwealth, 147 Va. 202, 206, 136 S.E. 666 [,667 (1927)]. But the disagreement here is as to whether the meaning is so plain and unambiguous as to require no interpretation. We are convinced from a consideration of the majority and dissenting opinions and the briefs of counsel that it is not. Consequently, we apply well-recognized rules for the interpretation and application of such statutes.

Id. at 45, 68 S.E.2d at 126-27.

In Superior Steel, we gave guidance concerning the weight to be accorded to administrative interpretation of statutory provisions:

The Commonwealth makes the point that the interpretation which the Commission places on section 43 of the tax law in this case is the administrative interpretation which it has always placed upon this statute, and should, therefore, prevail here. Courts, in construing statutes, where the statute is obscure or its meaning doubtful, will give great weight to and sometimes follow the interpretation which those whose duty it has been to administer it have placed upon it. But the doctrine of administrative interpretation will not be allowed to change the plain meaning of the statute.
In Houghton v. Payne, 194 U.S. 88, [99-100 (1904),] the majority opinion states the law thus: "Contemporaneous construction is a rule of interpretation, but is not an absolute one. It does not preclude an inquiry by the courts as to the original correctness of such construction. A custom of the department, however long continued by successive officers, must yield to the positive language of the statute."

11

147 Va. at 206-07, 136 S.E. at 667.  A principal rule of statutory interpretation is that courts will give statutory language its plain meaning.  See Jackson v. Fidelity & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 904 (2005).  Only when the statute is obscure or its meaning doubtful will courts defer to an administrative interpretation.  In such circumstances, as in the tax cases cited by the Commonwealth, courts will generally give great weight to the administrative interpretations of statutory provisions.

In this case, we are presented with a statutory scheme and regulations promulgated pursuant to that scheme.  Neither the statute nor the regulations define "adoptive parents." Stated differently, there is nothing in the statutory scheme that precludes recognition of same-sex couples as "adoptive parents."  The statute does not refer to a listing of a "mother" or a "father;" rather, it refers only to the undefined term "adoptive parents" and "intended parents."  The Commonwealth advances several arguments in support of its contention that issuance of a new birth certificate listing the names of the adoptive parents in these cases is not required or authorized by statute.  For each of the arguments, the Commonwealth uses administrative regulations in an attempt to interpret Code § 32.1-261.

The Commonwealth's first statutory interpretation argument involves 12 VAC § 5-550-100 involving a certificate of live birth and 12 VAC § 5-550-330 concerning the issuance of a new certificate after, among other circumstances, adoption.  The Commonwealth reasons that a certificate of live birth provides for listing of a mother and a father and a new certificate "shall be on the form in use at the time of birth."  12 VAC § 5-550-330.  The Commonwealth argues that Code § 32.1-261(B) provides that "[w]hen a new certificate of birth is established pursuant to subsection A of this section . . . [i]t shall be substituted for the original certificate of birth."  Because the statute requires "substitution" and the certificate of live birth provides for a listing of a mother and a father, any new certificate "on the same form in use at the time of birth" is inadequate to list two same-sex adoptive parents.

However, the Commonwealth's restrictive definition is undermined by its own administrative regulations.  The provisions of 12 VAC § 5-550-330 further require that the new certificate of birth "shall include . . . the names and personal particulars of the adoptive parents or of the natural parents, whichever is appropriate."  Clearly, the statute, Code § 32.1-261, anticipates the listing of adoptive parents without specific restrictions.  Further, the administrative

13

regulations plainly require the listing of adoptive parents without restriction.  The only perceived impediment is the Commonwealth's insistence upon utilization of a particular form adopted by the agency.

Here, the Commonwealth's reliance upon a restrictive interpretation of the word "substitution" or "substitute" is misplaced.  The Commonwealth insists on brief that the word "substitute" is a verb.  We will treat it as such.  To "substitute" means "to put in the place of another; exchange." Webster's Third New International Dictionary 2280 (1993).  The restrictive use of a particular form by the agency for live births and the administrative requirement that such a form also be used for new certificates after adoption is contrary to the ordinary and plain language of Code § 32.1-261, and the agency's own regulations, 12 VAC § 5-550-330.  Nothing in the statute requires a particular form and the regulations only require that the "names and particulars of the adoptive parents" be placed on the form.

Additionally, the Commonwealth argues that its restrictive interpretation should be adopted because it is consistent with Code § 63.2-1201, which limits the filing of an adoption petition to single individuals or to married couples.  However, this case does not involve Virginia adoptions.  Rather, this case involves out-of-state adoptions

14

and the issuance of new certificates of birth for children born in the Commonwealth.

## III.  Conclusion

We need not address federal constitutional or statutory issues in this case because we hold that a proper interpretation of Code § 32.1-261 requires that the Registrar issue a new certificate of birth listing both of the adoptive parents in each of the cases before us.  The sole issue in this case is the enforcement of the directive of the General Assembly concerning the issuance of new certificates of birth upon receipt of notice of an out-of-state adoption.  Just as we cannot substitute our judgment for that of the General Assembly, neither can an agency of the executive branch of government.  Code § 32.1-261 provides that a new certificate of birth shall be given upon application when there has been receipt of an out-of-state judgment or decree of adoption of a child born in the Commonwealth.  Pursuant to statute, the issuance of the new certificate of birth is to include "the names of the intended parents."  Pursuant to administrative regulation, the new certificate of birth should include "the names and personal particulars of the adoptive parents or the natural parents, whichever is appropriate."  The trial court erred in granting summary judgment to the Registrar.  The judgment of the trial court will be reversed and the case will

15

be remanded for further proceedings not inconsistent with this opinion and for the issuance of appropriate relief to the Petitioners herein.

Reversed and remanded.

CHIEF JUSTICE HASSELL, with whom SENIOR JUSTICE COMPTON joins, dissenting.

I.

I respectfully dissent from the opinion of the majority. The laws of Virginia simply do not require that the Registrar of Vital Records and Health Statistics issue a birth certificate that identifies two people of the same gender as the parents of a child.

II.

Code § 32.1-261 authorizes the Registrar to issue a new certificate of birth for a person born in this Commonwealth upon the satisfaction of several conditions, including an adoption. The Registrar issued the following regulation pursuant to Code § 32.1-269(A). Regulation 12 VAC 5-550-330 states:

> "12 VAC 5-550-330. New certificate.
>
> "The new certificate of birth prepared after adopting, legitimation, court determination of paternity, or acknowledgement of paternity shall be on the form in use at the time of birth and shall include the following items and such other information necessary to complete the certificate:

"1. The name of the child;

"2. The date and place of birth as transcribed from the original certificate;

"3. The names and personal particulars of the adoptive parents or of the natural parents, whichever is appropriate;

"4. The name of the attendant, printed or typed;

"5. The birth number assigned to the original birth certificate;

"6. The original filing date. The information necessary to locate the existing certificate and to complete the new certificate shall be submitted on forms prescribed by the State Registrar."

Among other things, the Regulation requires that the Registrar issue the new certificate of birth "on the form in use at the time of [the adopted child's] birth," and the form must include the names and personal particulars of the adoptive parents or of the natural parents, whichever is appropriate.

The form that was in use when the youngest of the adopted children in the case before this Court was born is set forth below.

**COMMONWEALTH OF VIRGINIA-CERTIFICATE OF LIVE BIRTH**
DEPARTMENT OF HEALTH-DIVISION OF VITAL RECORDS
**RICHMOND**

| DATE RECORD FILED | REGISTRATION AREA NUMBER | CERTIFICATE NUMBER | STATE BIRTH NUMBER **145–** |
|---|---|---|---|

| THIS CHILD | 1 FULL NAME OF CHILD (FIRST) (MIDDLE) (LAST) | 2 SEX OF CHILD |
|---|---|---|

3 DATE AND TIME OF BIRTH  A.M.  P.M. | 4 THIS BIRTH | 5 IF TWIN OR TRIPLET, BORN

PLACE OF BIRTH
6 NAME OF HOSPITAL OR INSTITUTION OF BIRTH | 7 COUNTY OF BIRTH (IF INDEPENDENT CITY, LEAVE BLANK)
8 CITY OR TOWN OF BIRTH  INSIDE CITY OR TOWN LIMITS? | 9 STREET ADDRESS OR ROUTE NO. OF PLACE OF BIRTH

USUAL RESIDENCE OF MOTHER
10 STATE (OR FOREIGN COUNTRY) OF MOTHER'S RESIDENCE | 11 COUNTY OF RESIDENCE (IF INDEPENDENT CITY, LEAVE BLANK)
12 CITY OR TOWN OF RESIDENCE  INSIDE CITY OR TOWN LIMITS? | 13 STREET ADDRESS OR ROUTE NO. OF RESIDENCE | ZIP CODE

MOTHER
14 FULL MAIDEN NAME OF MOTHER | 15 AGE OF MOTHER YEARS | 16 MOTHER'S PLACE OF BIRTH (STATE OR FOREIGN COUNTRY)

FATHER
17 FULL NAME OF FATHER | 18 AGE OF FATHER YEARS | 19 FATHER'S PLACE OF BIRTH (STATE OR FOREIGN COUNTRY)

INFORMANT
20 I CERTIFY THE ABOVE TO BE CORRECT ► (SIGNATURE OF MOTHER, FATHER, OR OTHER INFORMANT) | RELATIONSHIP TO CHILD

ATTENDANT'S CERTIFICATION
21 I CERTIFY THAT THIS CHILD WAS BORN ALIVE ON THE DATE AND HOUR STATED ABOVE (SIGNATURE OF ATTENDANT) ► | TITLE | DATE RECORD SIGNED
NAME OF ATTENDANT | ADDRESS OF ATTENDANT

REGISTRAR
22 REGISTRAR'S SIGNATURE ►
RESERVED FOR REGISTRAR'S USE

► I request a Social Security card for this child. _____ Signature _____ Date
Social Security cards are issued by the Social Security Administration and may take 3 - 4 months for receipt.
CONFIDENTIAL DATA FOR OFFICIAL USE ONLY (this section must be completed)  Items 28 and 32 specifically required by Federal Statute

23 CHILD'S MEDICAL RECORD NUMBER | 24 MOTHER'S MEDICAL RECORD NUMBER | 25 IS MOTHER MARRIED TO FATHER OF CHILD? (OR WAS SHE AT ANY TIME DURING THE 10 MONTHS PRECEDING BIRTH?)

26 RACE OF MOTHER | 27 IS MOTHER OF HISPANIC ORIGIN? If Yes, specify Cuban, Mexican, Puerto Rican, etc.: | 28 MOTHER'S SOCIAL SECURITY NUMBER | 29 EDUCATION OF MOTHER (specify only the highest grade completed) Elementary/secondary (0-12)_____ College (1-4 or 5+)_____

30 RACE OF FATHER (omit if not married to mother) | 31 IS FATHER OF HISPANIC ORIGIN? If Yes, specify Cuban, Mexican, Puerto Rican, etc.: | 32 FATHER'S SOCIAL SECURITY NUMBER | 33 EDUCATION OF FATHER (specify only the highest grade completed) Elementary/secondary (0-12)_____ College (1-4 or 5+)_____

34 MONTH IN WHICH PRENATAL CARE BEGAN | 35 PRENATAL VISITS Total number (if none, so state) | 36 A. SOURCE PRENATAL CARE (check all that apply)  ☐ Pvt Phys  ☐ Hlth Dept  ☐ Other

This form is identical in all pertinent respects to the forms that were used when the other adopted children involved in the appeal were born.

There is no designation on the form that will permit the Registrar to issue a birth certificate that contains the names of two mothers of a child or the names of two fathers of a child. The General Assembly, when it enacted Code § 32.1-

18

261(A), never contemplated that it had authorized the Registrar to issue a birth certificate that identifies two men as the parents of a child or two women as the parents of a child.  Additionally, the Regulation does not contemplate such result.

Petitioners assert "[t]here is nothing in [the Regulation] that precludes the inclusion in the birth certificate of information – such as the name of a second mother or father – in addition to that specified on the form."  However, the dispositive question is not whether the Regulation bars the issuance of the requested birth certificates.  The pertinent inquiry is whether the Regulation mandates the issuance of the requested birth certificates.

Petitioners do not, in their assignments of error, challenge the validity of the Regulation.  Petitioners do not assert that the Registrar lacked the authority to promulgate the Regulation.  Therefore, I am compelled to apply this Regulation.

The Registrar has opined that the Regulation, which I note was properly promulgated, does not require the issuance of a birth certificate to two people of the same gender who adopted a child outside of the Commonwealth.  This Court has consistently held that an administrative agency's decision is entitled to great weight and deference.  See Carr v. Forst,

19

249 Va. 66, 69, 453 S.E.2d 274, 276 (1995); <u>Commonwealth v. Carter</u>, 198 Va. 141, 146-47, 92 S.E.2d 369, 373 (1956); <u>Lee Compton Lines v. Commonwealth</u>, 192 Va. 411, 414, 65 S.E.2d 515, 517 (1951).  Additionally, the Court of Appeals of Virginia has stated that

> " 'the interpretation which an administrative agency gives its [law] must be accorded great deference.' <u>Virginia Real Estate Bd. v. Clay</u>, 9 Va. App. 152, 159, 384 S.E.2d 622, 626 (1989).  'The trial courts may reverse the administrative agency's interpretation only if the agency's construction of its [law] is arbitrary or capricious or fails to fulfill the agency's purpose as defined by its basic law.'  <u>Id.</u> at 161, 384 S.E.2d at 627."

<u>Jackson v. W.</u>, 14 Va. App. 391, 400-401, 419 S.E.2d 385, 390 (1992).  Applying the well-established precedent of this Court and of the Court of Appeals, I would accord the Registrar's interpretation of Code § 32.1-261 the deference to which it is entitled, and I would affirm the judgment of the circuit court.

III.

Furthermore, mandamus is an extraordinary remedy that may be used to compel a public official, such as the Registrar, to perform a duty that is purely ministerial and is imposed upon the official by law.  <u>Hertz v. Times-World Corp.</u>, 259 Va. 599, 607, 528 S.E.2d 458, 462 (2000); <u>Earley v. Landsidle</u>, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999); <u>Town of Front Royal v.</u>

Front Royal and Warren County Industrial Park Corp., 248 Va. 581, 584, 449 S.E.2d 794, 796 (1994).

In Gannon v. State Corp. Comm'n, 243 Va. 480, 482, 416 S.E.2d 446, 447 (1992), we stated the following principles that are pertinent here:

" 'A writ of mandamus is an extraordinary remedial process, which is not awarded as a matter of right but in the exercise of a sound judicial discretion. Due to the drastic character of the writ, the law has placed safeguards around it. Consideration should be had for the urgency which prompts an exercise of the discretion, the interests of the public and third persons, the results which would follow upon a refusal of the writ, as well as the promotion of substantial justice. In doubtful cases the writ will be denied, but where the right involved and the duty sought to be enforced are clear and certain . . . the writ will issue.' "

Accord Williams v. Matthews, 248 Va. 277, 281, 448 S.E.2d 625, 627 (1994); Early Used Cars, Inc. v. Province, 218 Va. 605, 609, 239 S.E.2d 98, 101 (1977); Board of County Supervisors v. Hylton Enterprises, Inc., 216 Va. 582, 584, 221 S.E.2d 534, 536 (1976); Richmond, Fredericksburg and Potomac R.R. v. Fugate, 206 Va. 159, 162, 142 S.E.2d 546, 548 (1965); Milliner's Adm'r. v. Harrison, 73 Va. (32 Gratt.) 422, 426 (1879); Tyler v. Taylor, 70 Va. (29 Gratt.) 765, 766–67 (1878).

I conclude, as the circuit court implicitly ruled, that awarding a writ of mandamus compelling the Registrar to issue a birth certificate identifying the names of two parents of

21

the same gender is contrary to the appropriate use of mandamus. The petitioners do not have a clear and certain right to the issuance of such certificates. Neither Code § 32.1-261 nor the Regulation compels such result.

And, the issuance of a birth certificate that identifies two people of the same gender as parents is inconsistent with the public policy of this Commonwealth. See Code § 20-45.2 (prohibiting recognition of same-sex relationships). Indeed, the General Assembly has not authorized adoptions by two people of the same gender in Virginia. See Code § 63.2-1201. Consequently, I do not believe that the petitioners have demonstrated an entitlement to this extraordinary remedial process.

I also note that petitioners' constitutional arguments lack merit. Accordingly, I would affirm the judgment of the circuit court.