COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff,[*] AtLee and Ortiz
Argued by videoconference

MANDY LYNN CORBIN

v.      Record No. 2227-23-4

CODY CHARLES SCHROCK, ET AL.

MEMORANDUM OPINION[**] BY
JUDGE GLEN A. HUFF
FEBRUARY 4, 2025

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
Brian M. Madden, Judge

Kate E. Beurmann-O'Neill (Livesay & Myers, P.C., on briefs), for
appellant.

James J. McGuire (Tracie L. Heglas, Guardian ad litem for the minor
child; Buchbauer & McGuire, P.C., on brief), for appellees.


This case concerns the stepparent adoption of C.S.[1] by her biological father, Cody

Charles Schrock ("father"), and his wife, Heather Marie Schrock ("stepmother").  Following a

hearing on this matter, the Frederick County Circuit Court (the "trial court") found that C.S.'s

biological mother, Mandy Lynn Corbin ("mother"), without just cause, had no contact with C.S.

for more than six months prior to the petition for adoption; therefore, mother's consent was not

required to enter the final order of adoption under Code § 63.2-1202(H).

On appeal, mother challenges (i) the constitutionality of Code § 63.2-1202(H), (ii) the

sufficiency of the evidence to support the finding that she lacked just cause for not contacting

---

[*] Judge Huff prepared and the Court adopted the opinion in this case prior to the effective
date of his retirement on December 31, 2024.

[**] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] "To protect the child's privacy, we use her initials rather than her name."  *Pilenza v.
Nelson Cnty. Dep't of Soc. Servs.*, 71 Va. App. 650, 652 n.2 (2020).

C.S. for the six months preceding the petition for adoption, (iii) the applicability and interplay of other Chapter 63 sections with respect to Code § 63.2-1202(H), (iv) the sufficiency of the petition for adoption to put her on notice, and (v) evidentiary rulings made during litigation. Because the evidence was sufficient to support the trial court's findings, the pleadings were sufficient to put mother on notice, and mother's other arguments are procedurally defaulted, this Court affirms the trial court's grant of the petition for adoption.

## BACKGROUND[2]

When C.S. was born on February 1, 2013, mother and father were not married. Their romantic relationship ultimately ended in 2015. Between December 2015 and November 2016, mother took C.S. to the emergency room nine times alleging that father had sexually assaulted C.S. During those visits, emergency room staff conducted forensic examinations of C.S. as well as invasive questioning and counseling by hospital staff and law enforcement.[3] When the forensic examinations did not indicate sexual abuse, mother acted as if in disbelief, even storming out of the room on one occasion. As a result of these continued forensic examinations, C.S. began experiencing uncontrolled urinating, nightmares, nail biting, stress, refusal to engage, little trust, confusion about the truth, and fear of physicians. The Department of Social Services

---

[2] "Under settled principles, we view the evidence in the light most favorable to the prevailing party in the trial court, granting to that party the benefit of any reasonable inferences." *Wright v. Wright*, 61 Va. App. 432, 442 n.2 (2013). "[T]he record in this case was sealed. In order to appropriately address the assignments of error [mother] raises, this opinion includes portions of the record that were sealed." *Pilenza*, 71 Va. App. at 652 n.2. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Id.* (quoting *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017)).

[3] The forensic examinations were described by a forensic nurse examiner as "a detailed examination of the genitalia . . . refer[red] to as the anal/genital/vulva/vaginal area examination . . . it is visual examining. It is separation of the tissue, the labia, so that we can examine all of the structures of the female vulva, the anus, to photograph."

- 2 -

("DSS") investigated and determined that all of the sexual abuse allegations made by mother were unfounded.

In January 2016, shortly after the sexual assault allegations began, the Frederick County Juvenile and Domestic Relations District Court (the "JDR court") entered a custody and visitation order awarding mother and father joint legal custody of C.S., with mother retaining primary physical custody, and father having visitation rights. In May 2016, mother brought C.S. to DSS Licensed Clinical Social Worker Dawn Welch because of the concerns of sexual abuse by father. On August 9, 2017, the JDR court entered a new custody and visitation order awarding father sole legal and physical custody of C.S. but affording mother visitation. Once father had legal and physical custody of C.S., the sexual abuse allegations ceased. On July 25, 2018, the JDR court again modified the visitation order, this time requiring mother to enroll in education-focused counseling with a child development provider and to remain in counseling until discharged by that provider. The same order authorized father to suspend all future visitation between C.S. and mother, until told otherwise by the JDR court, if he had a reasonable basis to believe that mother was violating the July 2018 order.[4]

Unrelated to the parties' ongoing judicial proceedings, father married stepmother on June 29, 2019. Mother got married in May 2020. The home that mother and her husband shared with other small children had an additional bedroom that mother said she intended for C.S.'s use.

---

[4] This provision in the June 2018 order states:

> Should Father have a reasonable basis to believe that . . . Mother
> has violated any provision of the aforesaid conditions, Father shall
> provide Mother with written notice, text or email permitted,
> suspending all further visitation until further Order of this Court.
> This provision is necessitated by Mother's repeated unwarranted
> and unfounded complaints of sexual abuse and her insistence in
> subjecting the child to repeated unnecessary examinations.

In March 2020, father exercised his authority to suspend mother's visitation.[5]  Mother subsequently moved to amend custody and visitation, and the JDR court issued a new order on June 7, 2021.  In this June 2021 JDR court order, the JDR court explained that father suspended mother's visitation after another unfounded allegation of sexual abuse was made.[6]  The June 2021 order also indicated that mother began working with a counselor in August 2018, according to the terms of the prior order, but that she stopped treatment in 2019 without explanation.  The JDR court further noted that, after mother's visitation was terminated by father in 2020, C.S. appeared to be doing "very w[e]ll."  She had started at a new school where she achieved All-A Honors and Most Improved Award.

In its June 2021 order, the JDR court directed mother to re-engage with an education-focused counselor and mandated that mother have contact with C.S. only through written letters provided to the child's counselor.  It provided, however, that mother's contact with C.S. could be increased to phone calls made during the counseling sessions if she wrote four to eight letters.  Both mother and father were ordered to coordinate joint counseling sessions with a reunification counselor "after the letters and phone call process proceeds successfully."  Only if

_____

[5] Father affected this suspension by texting mother the following:

> Pursuant to Paragraph 3 J of the Consent Order dated July 25, 2018, I am suspending all visitation between you and [C.S.].  I have reasonable basis to believe that you have violated at least Condition B and E of that Order.

Condition B stated: "The child shall not be left in the care of Teresa Evans or Barbara Moore.  Contact by the child with said relatives should be limited."  Condition E stated: "Mother shall commence education-focused counseling with a provider trained in the field of child development (e.g. Angela Butler) within 30 days of the date of entry of this Order and shall remain in counseling until discharged by the professional."

[6] There was credible evidence to believe mother directed C.S. to make the allegation against father after mother was charged with DWI.  This DWI was later reduced to reckless driving after mother completed substance abuse counseling.

such success continued were the counselors permitted to recommend supervised visitation. If those supervised visits proved successful, father was empowered to allow unsupervised daytime visits at the advice of the counselors.[7] The JDR court specifically warned, however, that "mother shall not attempt to end-run this limitation of contact with her daughter by sending messages, gifts, etc., through the schools or any other means." Mother wrote at least four letters to C.S., but the process never progressed to phone calls or in-person visits. Welch testified that the letters were a success from mother's side but "[f]rom [C.S.'s] perspective it was really hard for her when she got the first letter."[8]

On March 7, 2022, the JDR court entered an order finding that, despite its prior prohibition of "end-runs around contact via the reunification process[,] . . . mother showed up at a school Halloween function, which caused substantial regression [in C.S.] to the point that Ms. Welch does not believe that continued contact is in [C.S.'s] best interest at this time." Consequently, the JDR court barred mother from all contact and visitation with C.S. and ordered mother to "attempt to mitigate any incidental contact by removing herself from any situation where she finds herself in proximity to [C.S.]." On the alleged advice of counsel, mother did not appeal this final, no-contact order to the circuit court.

Notwithstanding the JDR court's ordered reunification process, the last time mother saw C.S. was in March 2020. Between that last visit and the March 2022 order, mother saw multiple therapists but never completed treatment. Mother also indicated that she was fully aware of what was expected of her under the JDR court's orders.

---

[7] In September 2021, the JDR court entered an agreed order indicating that mother had trouble securing an education-focused counselor through no fault of her own, had since engaged Sarah Childress as her counselor, and the delay in securing mother's counselor caused a similar delay in beginning reunification counseling.

[8] Welch noted that when C.S. attempted to write her first letter "it took her 10 or 15 minutes to say, do I call her mom, do I call her Mandy, what do I call her?"

On September 22, 2022, mother received a proposed consent to adoption form from father and stepmother that requested mother's consent to stepmother's adoption of C.S.; mother refused to sign it. On October 31, 2022, father and stepmother petitioned the trial court for the stepparent adoption of C.S. and served mother on November 7, 2022. The petition alleged that, because mother's last contact with C.S. was on March 8, 2020, mother "has, without just cause, not rectified the conditions which led to the termination of her visitation, nor has she visited or contacted [C.S.] for a period of six (6) months immediately prior to the filing of this petition." The petition further alleged that mother refused to sign the consent to adoption form, but that "her consent to the adoption is not required" pursuant to Code § 63.2-1202(H). The prayer for relief requested that the trial court approve the consent of C.S.'s father, pursuant to Code § 64.2-1221,[9] and enter a final order of adoption.[10] On January 10, 2023, mother moved to modify the terms of the JDR court's March 2022 no-contact visitation order.

The adoption petition proceeded to trial on August 23, 2023. The JDR court orders were admitted into evidence, and the trial court heard from several witnesses, including Sarah Childress—mother's counselor—and C.S. Throughout trial, mother consistently argued that Code § 63.2-1202(H) was unconstitutional because it allowed for the termination of parental rights without a finding of parental unfitness. The trial court asked the parties to confirm that

---

[9] The petition for adoption refers to Code § 64.2-1221. This appears to be an error as that code provision is titled "Report on fiduciaries' bonds; 'record of fiduciaries.'" and does not contain any reference to adoption proceedings. Presumably, father and stepmother intended for their prayer for relief to reference Code § 63.2-1221 which governs "Placement of children for adoption by agency or local board." This is clearly a scrivener's error, the correction of which "is a court-sanctioned action reforming a contract or other document . . . [;] scrivener's errors 'are difficult to prevent, and . . . no useful social purpose is served by enforcing . . . mistaken terms.'" *Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co.*, 270 Va. 566, 575 (2005) (third and fourth alterations in original) (quoting *S.T.S. Transp. Serv., Inc. v. Volvo White Truck Corp.*, 766 F.2d 1089, 1093 (7th Cir. 1985)).

[10] At various places the petition also cites Code §§ 63.2-1203, -1205, -1241.

"[t]his is a petition for adoption under 63.2-1202(H) as in hotel, correct?," to which mother's counsel replied, "Yes."

The trial court subsequently entered a final order of adoption on November 8, 2023. In that order, the trial court made the following factual findings: (1) mother's last contact with C.S. was March 8, 2020; (2) due to her actions and inactions, mother was not capable of caring for C.S.; (3) mother repeatedly made poor decisions while caring for C.S.; (4) mother's visitation was terminated on March 7, 2022, because of the detrimental impact those visits had on C.S.; (5) mother only moved to modify the visitation order four months after she was served with the petition for adoption; (6) between the March 8, 2022 order terminating visitation and her January 10, 2023 motion to modify visitation, "[mother] made no effort to comply with the Orders of the [JDR court]."[11] The trial court additionally found that mother's consent to the adoption was not required, pursuant to Code § 63.2-1202(H), because mother "has, without just cause, failed to rectify the conditions which led to the termination of her visitation with [C.S.], nor has she visited or contacted [C.S.] for a period of six [] months immediately prior to the filing of the Petition for Adoption." Father, stepmother, and C.S. moved permanently out of Virginia shortly after the final adoption order was entered.

This appeal followed.

ANALYSIS

Mother raises ten assignments of error on appeal. This Court finds several of these claims are procedurally waived and therefore they do not warrant consideration on the merits. Specifically, four assignments of error have been waived for failure to comply with Rule

---

[11] In explaining its ruling from the bench before entry of the final order, the trial court commented that mother has "moved forward with . . . life in a positive way. But that does not mean, in the [c]ourt's opinion, *that she's a fit parent to take - - to remain as a parent for* [*C.S.*] in this particular case." (Emphasis added).

5A:20.[12] Two assignments of error are barred for failure to obtain a ruling from the trial court, while another is barred due to mother's inconsistent positions in the course of this litigation. The remaining three assignments of error are considered on the merits.

I. Mother's Constitutionality Challenge to Code § 63.2-1202(H) is procedurally barred.

In her initial two assignments of error, mother argues that (i) "Virginia Code § 63.2-1202(H) is unconstitutional under the Fourteenth Amendment as it does not explicitly require a finding of parental unfitness," (ii) that the adoption order "violated [her] constitutional due process rights," and (iii) that "her attempts to have contact and visitation with [C.S.] were thwarted by earlier, unlawful delegations of authority to modify [visitation] orders to third parties in violation of . . . Code § 20-124.3(A) as held . . . in *Rainey v. Rainey*, 74 Va. App. 359 (2022)."

---

[12] In mother's third, seventh, ninth, and tenth assignments of error, respectively, she asserts that the trial court erred "in awarding the adoption based solely upon Virginia Code § 63.2-1202(H)," in "disregarding the Department's recommendations of reunification, and not following through with the legal requirements under [Code] § 63.2-1241, including weighing the factors of [Code] § 63.2-1205," "in soliciting expert testimony from a fact witness as to mother's purported unfitness, having abused its discretion in engaging in a *voir dire* of Sarah Childress and allowing her to provide inappropriate expert testimony," and "in allowing into evidence the child's stated preference in this matter." Mother does not, however, provide principles of law or authority for these assignments of error in her opening brief.

Rule 5A:20(e) requires an appellant's opening brief to state "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Specifically, "[w]ith respect to each assignment of error, the standard of review and the argument—including principles of law and the authorities—must be stated in one place and not scattered through the brief." Rule 5A:20(e). "Statements unsupported by . . . authority . . . do not merit appellate consideration. We will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992). "[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant," this Court may "'treat a question presented as waived.'" *Parks v. Parks*, 52 Va. App. 663, 664 (2008) (quoting *Jay v. Commonwealth*, 275 Va. 510, 520 (2008)). Mother's "failure to provide legal argument and authority as required by Rule 5A:20(e) leaves us without a legal prism through which to view [her] alleged error and, therefore, is significant." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017). Accordingly, this Court considers these arguments waived.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."[13] Rule 5A:18. Throughout litigation, mother consistently challenged the constitutionality of Code § 63.2-1202(H). She also objected to the final adoption order, arguing that Code § 63.2-1202(H) is unconstitutional. Despite consistently raising this issue, the trial court never ruled on the constitutionality of this statute—mother conceded as much during oral argument. "[I]t was [mother's] burden to obtain a clear ruling from the trial court on" Code § 63.2-1202(H)'s constitutionality. *Young v. Commonwealth*, 70 Va. App. 646, 657 (2019). Because she failed to obtain such a ruling, there is no error for this Court to review. *See Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010) ("Because [mother] did not obtain a ruling from the trial court . . . 'there is no ruling for [this Court] to review' on appeal, and h[er] argument is waived under Rule 5A:18." (quoting *Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993))).[14] Accordingly, mother's claims regarding the constitutionality of Code § 63.2-1202(H) are waived pursuant to Rule 5A:18.

### II. Mother's claim that the adoption matter should have proceeded under Code § 63.2-1221 is procedurally defaulted.

Mother's fourth assignment of error contends that the trial court improperly granted the adoption under Code § 63.2-1202(H) "when the relief prayed for by [father and stepmother] was requested under [Code] § 63.2-1221[,] which is inapplicable to the parties in this matter."

---

[13] *See also* Rule 5A:20(c)(2) ("An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court or other tribunal from which an appeal is taken . . . is not sufficient. If the assignments of error are insufficient, the appeal will be dismissed.").

[14] "Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, [mother] does not argue these exceptions and we will not invoke them *sua sponte*." *Williams*, 57 Va. App. at 347.

Because mother agreed at trial that this matter was proceeding under Code § 63.2-1202(H), she cannot reverse that position now to challenge this alleged technical defect on appeal.

"[A] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009) (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)). "The 'doctrine against approbation and reprobation' applies both to assertions of fact and law, and precludes litigants from 'playing fast and loose' with the courts." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 204 (2016) (first quoting *Wooten v. Bank of Am., N.A.*, 290 Va. 306, 310 n.1 (2015); and then quoting *Wilroy v. Halbleib*, 214 Va. 442, 445 (1974)).

Here, the trial court and mother had the following exchange:

> THE COURT: Thank you. [Mother's counsel], I have a question. Same question I had at the beginning of this proceeding. This is a petition for adoption under 63.2-1202(H) as in hotel, correct?
>
> [MOTHER'S COUNSEL]: Yes.

Similarly, during her closing argument, mother referenced Code § 63.2-1202(H) multiple times, including stating that "the petitioners are seeking entry of an order of stepparent adoption based in large part on Code [§] 63.2-1202(H)." Despite those acknowledgments below, mother now argues on appeal that the prayer for relief requested the adoption under Code § 63.2-1221, not Code § 63.2-1202(H), and therefore, the trial court's grant of the petition under Code § 63.2-1202(H) was improper. These are inconsistent positions in this course of litigation. Accordingly, under the doctrine of approbate and reprobate, this Court will not consider this assignment of error.

- 10 -

<u>III. The trial court relied upon sufficient evidence in granting the adoption petition.</u>

In her fifth assignment of error, mother alleges that "[t]he trial court erred in finding clear and convincing evidence that [she], without just cause, neither contacted nor visited with [C.S.] during the six-month period prior to the petition in this case being filed."[15] Similarly, in her eighth assignment of error, mother asserts that "[t]he trial court erred in awarding the adoption in absence of an explicit finding of [her] unfitness." In essence, both assignments of error challenge the sufficiency of the evidence to support the trial court's finding. In "determining the sufficiency of evidence on appeal," this Court "examine[s] the evidence in the light most favorable to . . . the prevailing party at trial, and the trial court's judgment will not be disturbed unless it is plainly wrong or without evidence to support it." *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022) (second alteration in original) (quoting *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 90 (2012)).

*A. Just Cause*

Code § 63.2-1202(H) provides that "[n]o consent shall be required of a birth parent who, without just cause, has neither visited nor contacted the child for a period of six months

---

[15] In support of this position, mother argues that the custody and visitation orders provided for an unlawful delegation of visitation authority to father and C.S.'s counselor. Such collateral attack on the JDR court orders, however, is not properly before this Court because mother never appealed any of those prior custody and visitation orders. Indeed, those orders are only in the record as exhibits offered by father in support of his petition for adoption. Under Virginia law, jurisdiction is derivative. *See Davis v. County of Fairfax*, 282 Va. 23, 31 (2011) ("[T]he rule is well settled that, if the court in which the action is brought has no jurisdiction of the subject matter, the appellate court will acquire none by the appeal." (quoting *Stacy v. Mullins*, 185 Va. 837, 841 (1946))); *see also* Code § 17.1-513 ("circuit courts . . . shall have appellate jurisdiction of all cases . . . from or to the judgment or proceedings of any inferior tribunal"). "The reason is, an appeal is a mere continuation of the original case,—a proceeding in the action. The want of jurisdiction . . . in the court where the action was brought, continues in every court to which the action may be appealed, [because] . . . it is the same action." *Id.* (quoting *Stacy*, 185 Va. at 841). Because mother never appealed the custody and visitation orders, the trial court never obtained jurisdiction over them. As this Court's jurisdiction derives from the trial court's jurisdiction, this Court necessarily lacks jurisdiction to consider the allegedly unlawful orders and their effect on mother.

immediately prior to the filing of the petition for adoption or the filing of a petition to accept consent to an adoption." In *Perkins v. Howington*, 82 Va. App. 1 (2024), this Court interpreted the phrase "just cause" in Code § 63.2-1202(H) to mean that "a parent's failure to visit or communicate must be due to factors *beyond* [*her*] *control*." *Id.* at 10 (alteration in original) (quoting *Adoption of Dore*, 469 So.2d 491, 494 (La. Ct. App. 3d Cir. 1985)). Therefore, in the context of Code § 63.2-1202(H), "[n]o consent shall be required of a birth parent who, [for factors within their own control], has neither visited nor contacted the child for a period of six months immediately prior to the filing of the petition for adoption or the filing of a petition to accept consent to an adoption." *See Perkins*, 82 Va. App. at 10.

In *Perkins*, this Court considered a similar circumstance where a mother ("PM") failed to comply with court orders and was found to have failed to visit or contact her child for the six months prior to her child's adoption without just cause. *See id.* at 10-11. A JDR court awarded PM supervised visitation and ordered her "to submit to random drug screenings and to refrain from alcohol and illegal drug use." *Id.* at 5. Several months later "because of [PM]'s non-compliance with the previous . . . order's required drug screening" the JDR court entered "a new child protective order[] prohibiting [PM] from having any contact with the child until further order of the court." *Id.* at 6. PM moved to amend the protective order to allow visitation, but the hearing on the motion was continued several times for various reasons. *Id.* Notwithstanding PM's attempts to modify the protective order, the *Perkins* child's father and stepmother petitioned for a stepparent adoption approximately nine months after PM's last contact with the child and while the no-contact protective order was in effect. *Id.* In the petition for adoption, the *Perkins* child's father and stepmother argued PM's consent was not required under Code § 63.2-1202(H) because she had not contacted or visited child for the six months prior to their petition. *Id.* The circuit court agreed and granted the petition for adoption without

PM's consent. *Id.* at 7-8. On PM's appeal, this Court affirmed the circuit court's finding that PM lacked "just cause" for not visiting or contacting the child for the six months prior to the petition for adoption "because [PM]'s own actions led to the . . . protective order" and therefore "[PM]'s lack of contact was not caused by circumstances 'beyond [her] control,' but rather exclusively by her own conduct." *Id.* at 11 (fourth alteration in original).

This case closely parallels *Perkins*. Here, the JDR court initially awarded mother visitation. That award was later twice amended: first to require mother to undergo education-focused counseling, and second to require mother to undergo a reunification process beginning with exchanging letters with C.S. through their respective counselors. Importantly, mother was specifically ordered not to "attempt to end-run" the JDR court's limitations on her contact with C.S. Notwithstanding that warning, "mother showed up at a school Halloween function, which caused substantial regression [in C.S.] to the point that . . . continued contact" with mother was not "in [C.S.'s] best interest at this time." As a result, on March 7, 2022, the JDR court barred all contact and attempts at contact between mother and C.S. From March 7, 2022, until January 10, 2023—several months *after* mother was served with the petition for adoption—mother made no attempts to appeal or modify the no-contact order.

Just as in *Perkins*, mother's no-contact order was put in place because of her failures to comply with court orders. Despite being specifically warned not to attempt to "end run" the order, she did so anyway. But, unlike in *Perkins*—where PM was actively seeking to modify her visitation order—here mother made no efforts to modify the no-contact order; indeed, the record reflects that she functionally gave up on her attempts to have any contact with C.S.[16] Further,

---

[16] In *Perkins*, this Court also recognized that "issuance of a protective order does not automatically lead to a parent's rights being terminated under Code § 63.2-1202(H). Instead, a parent seeking to reinstate contact with their child always has the opportunity to seek to modify their protective order." *Perkins*, 82 Va. App. at 11 n.5. This Court today reinforces this principle and specifically notes that in this case mother failed to seek any modification to her

her only effort to modify the no-contact order was several months *after* she was served with the petition for adoption. Thus, the no-contact order remained in place due to factors within mother's own control. Because this record clearly reflects that the JDR court's orders were repeatedly modified in response to mother's own conduct—which is entirely within her own control—this Court cannot say the trial court's conclusion that mother failed to contact or visit C.S. without just cause is plainly wrong or without evidence to support it. Accordingly, that judgment is affirmed.

### B. Unfitness

Mother also asserts that "[t]he trial court erred in awarding the adoption in absence of an explicit finding of [her] unfitness." The Supreme Court held that "[i]t is clear that the Constitution requires more than a mere showing of the child's best interests to terminate parental rights." *Copeland v. Todd*, 282 Va. 183, 199 (2011). "In order to deprive a parent of the custody of her children proof of unfitness of the parent must be shown by clear, cogent, and convincing evidence." *Robinette v. Keene*, 2 Va. App. 578, 584 (1986). This proof of parental unfitness protects the parent's rights and provides meaningful safeguards against the commonly applied "best interest of the child" standard. *See Copeland*, 282 Va. at 198-99 ("[W]e have little doubt that the Due Process Clause would be offended [if] a State were . . . to force the breakup of a natural family, over the objections of the parents . . . without some showing of unfitness and for the sole reason that . . . [it] be in the children's best interest." (second alteration in original) (quoting *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978))). In *Todd v. Copeland*, 55 Va. App. 773, 794 (2010), *rev'd in part on other grounds*, 282 Va. 183 (2011), this Court interpreted Code § 63.2-1202(H) to be "a codification of the principle that parental unfitness may be established

custody and visitation arrangement until several months after the petition for adoption had been filed, and several years since her last visit or contact with C.S.

- 14 -

by proof of abandonment of a child without justification." Indeed, the Supreme Court has established that "[a]bandonment of a child without justification establishes parental unfitness." *Patrick v. Byerley*, 228 Va. 691, 694 (1985). Because Code § 63.2-1202(H) codifies "the principle that parental unfitness may be established by proof of abandonment of a child without justification," *Todd*, 55 Va. App. at 794, and "[a]bandonment of a child without justification establishes parental unfitness," *Patrick*, 228 Va. at 694, it naturally follows that a finding under Code § 63.2-1202(H) that a parent has failed to visit or contact their child for a period of six months without just cause—the codification of the abandonment principle—is sufficient to establish parental unfitness.

Here, as discussed above, the trial court applied Code § 63.2-1202(H) and found that mother had, without just cause, failed to contact C.S. for at least six months prior to father and stepmother's petition for adoption. Such finding is sufficient to establish mother's unfitness. And because this Court today affirms the trial court's finding that mother lacked just cause for failing to visit or contact C.S. during that six-months period, this Court similarly finds sufficient evidence to support the trial court's judgment of mother's parental unfitness.

Finally, insofar as mother is challenging the trial court's failure to explicitly state she was an unfit parent, this Court is mindful that trial courts are not required to "state for the record the reasons underlying their decisions," *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015), or include "findings of fact and conclusions of law" in a final order, *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982). Accordingly, the trial court's grant of the adoption over mother's objection is affirmed because there is sufficient evidence to find, as a matter of law, that mother is an unfit parent. Further, because the trial court is not required to explain itself, its failure to do so is of no consequence.

IV. The trial court was not required to consider, under Code § 63.2-1205, whether the adoption was in C.S.'s best interests.

In her sixth assignment of error, mother argues "[t]he trial court did not properly weigh the factors of [Code] § 63.2-1205." Code § 63.2-1205 provides that, "[i]n determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, or is unobtainable, the [trial] court shall consider whether granting the petition pending before it would be in the best interest of the child." This section goes on to provide several factors for the trial court to consider in assessing the best interests of the child. *See* Code § 63.2-1205.

"Questions of statutory interpretation . . . are subject to *de novo* review on appeal, and we owe no deference to the circuit court's interpretation of the statutory scheme." *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022). The duty of the courts is "to construe the law as it is written." *Hampton Rds. Sanitation Dist. Comm'n v. City of Chesapeake*, 218 Va. 696, 702 (1978). "When construing a statute, our primary objective 'is to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 262-63 (2018) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "We must determine the legislative intent by what the statute says and not by what we think it should have said." *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541-42 (2016) (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).

This Court finds no merit in appellant's claim that the trial court erred in failing to consider the factors in Code § 63.2-1205 where the adoption proceeding was governed by the standards laid out in Code § 63.2-1202(H). These two statutes address mutually exclusive

circumstances and thus operate independently of one another.[17] The framework created by the plain language of Code § 63.2-1205 applies only to proceedings where a parent's consent is required but is being withheld. In stark contrast, Code § 63.2-1202(H) provides that "[n]o consent shall be required of a birth parent who, without just cause, has neither visited nor contacted the child for a period of six months immediately prior to the filing of the petition for adoption or the filing of a petition to accept consent to an adoption." Where, as here, a trial court finds such unjustified lack of contact during the required six-month period, Code § 63.2-1205 becomes irrelevant and Code § 63.2-1202(H) instead controls the underlying proceeding. As the Supreme Court recognized in *Copeland*, 282 Va. at 201-02, these two statutory provisions stand as independent, alternative grounds for granting an adoption petition.

Here, the trial court determined that mother's consent was not required because she failed to satisfy the just-cause provision of Code § 63.2-1202(H), as discussed above. Consequently, there was no Code § 63.2-1205 analysis to be done because that provision only applies when consent is withheld by someone "whose consent is required." *Compare* Code § 63.2-1205 ("determining whether the valid consent of any person *whose consent is required* is withheld contrary to the best interests of the child . . ." (emphasis added)), *with* Code § 63.2-1202(H) ("[*n*]*o consent shall be required* of a birth parent who, without just cause, has neither visited nor contacted the child for a period of six months immediately prior to the filing of the petition for adoption . . ." (emphasis added)). Accordingly, this Court finds that the trial court did not err when it did not perform a Code § 63.2-1205 analysis.

---

[17] *See Copeland*, 282 Va. 183 (reinstating an adoption order reversed by this Court on the ground that Code § 63.2-1205 did not violate due process, regardless of the fact that the trial court erred in its application of Code § 63.2-1202(H)'s six-month provision).

CONCLUSION

Several of mother's assignments of error on appeal, including her constitutional challenges to Code § 63.2-1202(H), are procedurally defaulted under Rules 5A:18 and 5A:20(c)(2), (e). Her assertion that the trial court erred in granting the adoption under Code § 63.2-1202(H), even though the petition stated a different code section, is similarly defaulted because she has taken inconsistent positions in the course of this litigation. On the merits of mother's remaining sufficiency claims, this Court finds sufficient evidence in support of the trial court's conclusion that mother failed to have contact with C.S. for the six months prior to the filing of the adoption petition and that such finding is sufficient as a matter of law to support a finding of unfitness. For these reasons, the trial court's grant of the petition for adoption is affirmed.

*Affirmed.*